## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| EDUCATION EXPLOSION, INC. d/b/a | \| |
| IMPACT CHARTER SCHOOL | \|    Civil Action # 3:25-cv-00163-JWD-RLB |
| *Plaintiff,* | \| |
| v. | \|    Judge John W. deGravelles |
| | \| |
| LOUISIANA BOARD OF ELEMENTARY | \|    Magistrate Judge Richard L. Bourgeois, Jr. |
| AND SECONDARY EDUCATION | \| |
| *Defendant.* | \| |

---

**INTERESTED PARTIES' RESPONSE AND MEMORANDUM IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S COMBINED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

---

**NOW INTO COURT,** through undersigned counsel, come INTERESTED PARTIES, EDUCATION EXPLOSION, INC. and IMPACT CHARTER SCHOOL in response to the Motion to Dismiss and Memorandum in Support filed by Defendant, Louisiana Board of Elementary and Secondary Education ("BESE"), in support of a request for an Order from this Court dismissing with prejudice the Plaintiff's Complaint and all requests for relief against the BESE in the above-captioned matter. The grounds for this Response are set forth in this Memorandum in Support of Response to Defendant's Motion to Dismiss.

## I.    INTRODUCTION

Louisiana law specifically provides for the governance and requirements related to regulating charter schools. The law is clear and well established that the Louisiana Board of Elementary and Secondary Education ("BESE") has the authority to revoke or to reconstitute a public charter like Education Explosion, Inc. under La. Rev. Stat. 17:3992. BESE had clear authority to reconstitute the Board of Directors of Education Explosion, Inc. ("the organization") d/b/a Impact Charter School ("the school") under La. Rev. Stat. 17:3992(D) due to significant governance and compliance failures. BESE authorized the organization as a Type 2 charter

operator, and Education Explosion, Inc. d/b/a Impact Charter School entered into a charter contract in which it agreed to comply with all applicable local, state, and federal laws as well as regulations applicable to charter schools and all requirements imposed by BESE policy. The organization also consented to BESE's oversight over the school pursuant to La. R.S. 17:3981. This included the right to require corrective action related to violations of state or federal laws.

When BESE exercised its authority to review serious issues of compliance and governance and ultimately reconstituted the board of the charter pursuant to La. R.S. 17:3992(D), Plaintiff alleged multiple violations of federal and state law. However, BESE was well within its rights to address these issues. This Court should dismiss Plaintiff's claims against BESE for lack of subject matter jurisdiction and for failure state a claim. This Court should also deny any request for injunctive relief as moot, as well as for failure to establish the elements necessary for such relief.

## II.    BACKGROUND

Education Explosion, Inc. is a Louisiana licensed non-profit corporation that operates and governs Impact Charter School, located in Baker, Louisiana. The organization entered into a Type 2 charter school contract with BESE. The school services hundreds of students from diverse backgrounds, and it is an integral part of the community.

On February 5, 2025, the Louisiana Legislative Auditor ("LLA") issued an investigative audit report which detailed a thorough forensic financial audit of Education Explosion, Inc. d/b/a Impact Charter School, along with very serious findings of alleged financial fraud by Chakesha Scott ("Ms. Scott") as the CEO of Education Explosion, Inc.[1] The LLA audit report also named individuals and entities, including former board members of the organization, and Friends of Impact Charter School ("FICS"), a nonprofit organization of which Ms. Scott  is the registered

---

[1] *See* Interested Parties' Exhibit 1, *East Baton Rouge Parish Charter School – Education Explosion, Inc. d/b/a Impact Charter School*. Louisiana Legislative Auditor (Feb. 5, 2025).

agent, as parties that were involved in financial fraud related to Education Explosion, Inc. and Impact Charter School. The findings included evidence stating that Ms. Scott diverted substantial sums of money out of the accounts of Education Explosion, Inc. and FICS over several years.

On February 21, 2025, the Louisiana Department of Education ("LDOE") and BESE held a Special Board Meeting to discuss the impact of the LLA audit report.[2] Notice was sent to the existing board members of Education Explosion, Inc. in advance of the meeting.[3] Ms. Scott, her legal counsel Mr. Ronald Haley[4] ("Mr. Haley"), and the existing board[5] were given the opportunity to produce records and responses to questions regarding their compliance with applicable laws and regulations.

During the Special Board Meeting, LDOE and BESE evaluated the extent of the school's noncompliance, to address deficiencies, to ensure appropriate oversight and accountability moving forward, and to determine whether the existing board should be reconstituted pursuant to state law and the charter school contract.[6] In these circumstances, and pursuant to state law, BESE has the option to revoke the charter and shut down the school, or to reconstitute the board of the charter. La. Rev. Stat. 17:3992(C) and (D). At least one former board member attended this meeting.[7] Ms. Scott chose not to attend the meeting, but had previously provided her response to the LLA report.[8]

---

[2] *See* BESE Exhibit 4, Agenda of BESE Special Called Meeting (to be held on Feb. 21, 2025).

[3] *See* BESE Exhibit 3, Letter dated Feb. 18, 2025 to Education Explosion, Inc. regarding hearing.

[4] Mr. Haley has filed the Complaint in the above-captioned matter, as counsel of record for Education Explosion, Inc. and Impact Charter School. At the outset of this matter, Mr. Haley represented to the public that he was legal counsel for Ms. Scott in her individual capacity as well, and he also filed separate state court pleadings as counsel of record on behalf of Ms. Scott. However, Mr. Haley claims he is no longer counsel for Ms. Scott. He continues to claim that is legal counsel for Education Explosion, Inc. d/b/a Impact Charter School. However, he is no longer legal counsel for Education Explosion, Inc. or for Impact Charter School, as the Board of Directors terminated any contract for legal services with Mr. Haley on February 25, 2025, and provided notice to Mr. Haley of said termination on this date. *See* Interested Parties' Exhibit 2.

[5] The existing board members at the time of this meeting. All of those board members have since been removed, and the current Board of Directors do not include any individuals from the prior board.

[6] *See* Interested Parties' Exhibit 3, Minutes of BESE Board Meeting (Feb. 21, 2025).

[7] *Id.*

[8] *Id.*

On February 21, 2025, after receiving public comment, BESE found that that the school committed multiple infractions of charter school law.[9] At this meeting, BESE also voted to reconstitute the board of Education Explosion, Inc. pursuant to La. Rev. Stat. 17:3992(D) and to appoint new members from a list of recommended names that was provided by LDOE.[10]

On February 24, 2025, the Board of Directors Education Explosion, Inc. held a board meeting with the newly appointed board.[11] The meeting was open to the public, and advance notice of the meeting was provided. At this meeting, the Board of Education Explosion, Inc. voted and approved to place Ms. Scott and Eric Scott (the principal of the school, and Ms. Scott's husband) on administrative leave while the LDOE, BESE, and LLA continue their investigation into the findings of alleged financial fraud committed by Ms. Scott.[12] The Board of Directors also named an Interim Superintendent of Impact Charter School.[13] The Board also authorized and approved to authorize Dr. Torrence Williams, Board President, and Dr. Michelle Clayton, Interim Superintendent, to make, execute, rescind, and endorse contracts and vendors in the name of and on behalf of Education Explosion, Inc. and Impact Charter School.[14]

On February 25, 2025, the Board sent notice to Chakesha Scott, the CEO of Education Explosion, Inc., that she was placed on administrative leave, effective immediately, with certain conditions placed on the leave.[15] The Board also sent notice to Eric Scott, Principal of Impact Charter School, that he was placed on administrative leave, effective immediately, with certain conditions placed on the leave.[16] On March 7, 2025, the Board sent a Notice of Termination to

---

[9] *Id.*
[10] *Id*.
[11] *See* Interested Parties' Exhibit 4, Minutes of Feb. 24, 2025 Board Meeting of Education Explosion, Inc.
[12] *Id*.
[13] *Id*.
[14] *Id*.
[15] *See* Interested Parties' Exhibit 5, Notice to Ms. Scott of Administrative Leave.
[16] *See* Interested Parties' Exhibit 6, Notice to Eric Scott of Administrative Leave.

Chakesha Scott for failure to comply with the conditions of her leave, effective immediately.[17]

Ms. Scott no longer has any administrative authority over Education Explosion, Inc. or over Impact Charter School. In addition, Ms. Scott has been the subject of an investigation by the State of Louisiana, specifically relating to her governance and operation of Education Explosion, Inc. and Impact Charter School, which includes numerous findings of alleged financial fraud.[18]

## III.     LAW

### a.  Lack of Subject Matter Jurisdiction

Federal Rule of Procedure 12(b)(1) provides for the dismissal of a claim for lack of subject matter jurisdiction. The Court must address any issue of jurisdiction prior to proceeding with any claims. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). The party that asserts the jurisdiction bears the burden of proof that jurisdiction is, in fact, proper. *Id*. If a party asserts a lack of jurisdiction under Rule 12(b)(1), there is no presumptive truthfulness that attaches to the allegations. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. May 1981).

### b.  Failure to State a Claim

Federal Rule of Procedure 12(b)(6) provides that dismissal is proper where a plaintiff has failed to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule (12)(b)(6), "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, the facts pleaded in a plaintiff's complaint must draw a reasonable inference that the plaintiff will prevail on the merits.

---

[17] *See* Exhibit 7, Notice of Termination to Ms. Scott.
[18] *See* Interested Parties' Exhibit 1.

*Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021). A plaintiff cannot merely recite bare legal conclusions; rather a plaintiff must allege well-pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### c. Preliminary Injunction

A preliminary injunction requires a showing of "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir. 2024). "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A preliminary injunction "should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 809 (5th Cir. 1989), citing *Mississippi Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985); *Apple Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 389 (5th Cir.1984).

## IV.    ARGUMENT

### a. This Court Should Dismiss Plaintiff's Claims for Lack of Subject Matter Jurisdiction.

Federal Rule of Procedure 12(b)(1) provides for the dismissal of a claim for lack of subject matter jurisdiction. The party that asserts the jurisdiction bears the burden of proof that jurisdiction is in fact proper. *Ramming,* 281 F.3d at 161; *Spokeo v. Robins,* 578 U.S. 330, 338 (2016). A federal court is a court of limited jurisdiction and thus cannot proceed to hear a matter in which it lacks subject matter jurisdiction. The court must address any attacks on subject matter jurisdiction prior to addressing the merits. *Ramming,* 281 F.3d at 161. Federal courts have subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, or over civil cases

in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which the parties are diverse in citizenship. 28 U.S.C. §§ 1331, 1332. There is a presumption against subject matter jurisdiction that must be rebutted by the party asserting it in federal court. *See, e.g. Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984). If the court lacks subject-matter jurisdiction, the court must dismiss the action. Fed.R.Civ.P. 12(h)(3).

In this instance, Plaintiff's suit is barred by sovereign immunity. BESE is a state agency, and Plaintiff's suit expressly names only BESE, and no individuals employees or officers of BESE, as named defendants. Moreover, the Eleventh Amendment bars private suits against nonconsenting states in federal court. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Plaintiff is further barred from filing suit against state officials or agencies that are effectively a suit against a state, including any official capacity claims. *Id. See also Moore v. Louisiana Board of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).

The *Ex parte Young* exception is an exception to the Eleventh Amendment sovereign immunity. 209 U.S. 123 (1908). This exception is "a legal fiction that allows private parties to bring "suits for injunctive or declaratory relief against *individual* state officials acting in violation of federal law." *City of Austin*, 943 F.3d at 997, citing *Raj v. La. State Univ.,* 714 F.3d 322, 328 (5th Cir. 2013). (emphasis added). However, here, Plaintiff cannot proceed under the *Ex parte Young* exception because the exception has no application in suits against states and state agencies, and the exception only allows for prospective relief, not "past-tense declaratory judgment." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*. 506 U.S. 139 (1993); *See also Freedom from Religion Found. v. Abbott,* 955 F.3d 417, 425 (5th Cir. 2020); *Papasan v. Allain*, 478 U.S. 265, 277, 278 (1986).

Further, in *Moore*, the Fifth Circuit agreed with BESE and the Louisiana Department of

Education, that as state agencies, the *Young* exception:

> "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *See Metcalf & Eddy*, 506 U.S. at 146, 113 S.Ct. 684. (emphasis added). Two of the state defendants, the BESE and the Department of Education, are not individual officers, but rather agencies of the state. We conclude the district court abused its discretion by exercising jurisdiction over the two state agency defendants, which enjoy sovereign immunity against such exercises of jurisdiction.

*Id*. at 963-964.

Thus, Plaintiff fails to establish jurisdiction under this exception because BESE is a state agency, and Plaintiff explicitly seeks a declaratory judgment in this matter declaring that BESE's actions violated the rights of the organization.

In addition, Plaintiff asserts a violation of Louisiana state law as a primary claim for relief against BESE. However, a federal court cannot exercise jurisdiction over a state claim. A suit that is brought under state statute which brings within the purview of the statute a breach of duty imposed by the federal statute, should not be regarded as a suit arising under the laws of the US. *Moore v. Chesapeake Ohio Railway Co*., 291 U.S. 205, 214 (1934).

Thus, this Court should dismiss Plaintiff's suit against BESE for lack of subject matter jurisdiction.

### b. This Court Should Dismiss Plaintiff's Claims for Failure to State a Claim.

In the event that the Court finds it has subject matter jurisdiction over the claims asserted by Plaintiff, each of Plaintiff's claims fails to state a claim against BESE. Plaintiff's claims should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere recitals of elements of a cause of action or conclusory statements do not suffice. *Id*. "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). In this instance, Plaintiff's claims in all four counts of the Complaint fail to state a claim on which relief can be granted.

### i. <u>BESE's actions did not constitute a deprivation of Due Process.</u>

In Count I, Plaintiff's allegations do not constitute a violation of pursuant to 42 U.S.C. §1983, and Plaintiff's allegations also do not constitute a violation of due process under the Fourteenth Amendment. Accordingly, Plaintiff fails to state a claim under either cause of action.

### 1. Plaintiff fails to state claim under 42 U.S.C. 1983.

In this instance, Plaintiff alleges that BESE has violated 42 U.S.C. 1983. In order to allege a deprivation of rights of due process pursuant to a claim under this statute, Plaintiff must allege that a *person*, who, acting under color of law, has deprived him of some right under the Constitution or other laws of the United States. 42 U.S.C. §1983. However, BESE is not a person within the meaning of this statute. BESE is a state agency of Louisiana, and it is well established that states and state officials who act within their official capacity are not "persons" within the meaning of this statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). As BESE is a state agency with members acting in their official capacity, Plaintiff cannot state a claim under 42 U.S.C. §1983, and Plaintiff's claim should be dismissed.

### 2. Plaintiff fails to allege a denial of due process under the Fourteenth Amendment.

An essential principle of due process is that there be a deprivation of life, liberty, or property within the purview of the Fourteenth Amendment. In order to state a cause of action under

§1983 for violation of due process, a plaintiff "must show that [it has] asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990). Plaintiff has not identified a cognizable liberty or property interest that is protected under the Fourteenth Amendment.

Plaintiff's claim lacks merit. Plaintiff cannot show that it was deprived of due process granted under the Fourteenth Amendment. Plaintiff asserts that BESE failed to provide sufficient notice, a fair hearing, or an opportunity for the leadership and legal counsel to defend against the allegations of governance issues. BESE provided advance notice to Plaintiff of the board meeting in which it intended to discuss issues of ongoing governance and compliance failures.[19] BESE then held a public meeting and allowed Plaintiff's representative and board members to attend with legal counsel in order to present arguments on their behalf regarding these serious issues.[20] Plaintiff has not alleged or otherwise established that BESE failed to comply with any requirements under state or federal law. Thus, due process was had, and all requirements of BESE to afford Plaintiff due process were met.

### 3.  Plaintiff's allegations are conclusory and not fact-based.

Further, Plaintiff has alleged mere conclusions of law with no factual detail. The facts pleaded in Plaintiff's Complaint do not lead to a reasonable inference that Plaintiff will prevail on the merits. *See Mandawala,* 16 F.4th at 1150. Instead, Plaintiff's allegations are bare legal conclusions, rather than well-pleaded facts. Plaintiff's complaint fails to meet the standard set by *Twombly* because it does not contain sufficient factual matter that is plausible on its face. *Twombly*, 550 U.S. at 570. Plaintiff's complaint also fails under both *Twombly* and *Iqbal* because it does not

---

[19]  *See* BESE Exhibit 3.
[20] *See* BESE Exhibit 3. *See also* Interested Parties' Exhibit 3.

contain factual allegations or any procedural deficiencies relating to its claim of denial of due process. Moreover, Plaintiff has not plead any facts to draw any inference that BESE could be liable for any of the allegations levied by Plaintiff. *Id*; *Iqbal*, 556 U.S. at 678.

Plaintiff has failed to establish any of the required elements under both statutes and thus fails to state a claim for which any relief can be granted. Thus, Count I must be dismissed.

### ii. **BESE has established authority and did not violate Louisiana Charter School Law.**

Plaintiff alleges that BESE's actions to remove and reconstitute the Board of Directors violated provisions of state law. Louisiana law establishes that the state agency, BESE, is the authorizer and regulator of public charters like Education Explosion. La. R.S. 17:3981, *et seq*. Louisiana law specifically provides for the governance and requirements related to regulating charter schools. *Id. See also* La. Const. Ann. art. VIII, § 3. The state constitution also provides that "the board shall have the power to supervise, manage, and operate or provide for the supervision, management, and operation of a public elementary or secondary school which has been determined to be failing." La. Const. Ann. art. VIII, § 3(A). "Under La. R.S. 17:3981, BESE is empowered to enter into any proposed charter, which complies with the Louisiana Charter School Law and the rules adopted pursuant to its authority that BESE determines is a valid, complete, financially well-structured, and educationally sound proposal." *Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary & Secondary Educ.,* 2011-2067 (La. App. 1 Cir. 6/22/12), 97 So. 3d 440, 445. The law is clear and well established that BESE also has the authority to revoke a charter. La. R.S. §17:3992.

Plaintiff's charter contract incorporates BESE's authority in multiple provisions. Under its contract with BESE, Education Explosion, Inc. d/b/a Impact Charter School committed to complying with all applicable rules and regulations for charter schools.  The charter contract

establishes the school's operational, financial, governance, and compliance requirements, and also outlines the evaluation criteria, renewal terms, and grounds for revocation. Section 1.3.4 and Section 2.28 provide that the charter operator shall be subject to all rules and procedures adopted by BESE, and shall comply with all applicable local, state, and federal laws and regulations applicable to charter schools and all requirements imposed by BESE policy and regulations.[21] Section 2.20.1 provides that BESE and LDOE shall have broad oversight over the school pursuant to La. R.S. 17:3981, including but not limited to the right to require corrective action related to violations of state or federal laws.[22] Section 2.22.1 requires that the charter operator or school administrator produce any documentation requested by BESE, LDOE, the LLA, and other authorized contractors.[23]

Section 5.3 of the Charter Contract addresses the grounds for revocation of a charter school.[24]  This section provides that BESE may terminate, or revoke the agreement at any time upon determination and affirmative vote by a majority of BESE that the charter operator, its board members, officers, or employees did any of the following: (1) committed a material violation of any of the conditions, standards, or procedures provided for in the agreement or in BESE policy; (2) failed to meet or pursue within the agreed timelines any of the academic or other educational results specified in the agreement in BESE policy; (3) failed to meet generally accepted accounting standards of fiscal management; or (4) violated any provision of law or policy applicable to a charter school, its officers, or employees. This section of the charter contract is aligned with La. Rev. Stat. §17:3992(C), which provides identical reasons for revocation of a charter.

Revoking a charter effectively closes the school, displacing children and employees, and

---

[21] *See* BESE Exhibit 1.
[22] *Id*.
[23] *Id*.
[24] *Id.*

straining families and the community. Revoking a charter school should be reserved as the last option when a charter fails to comply with applicable laws, statutes, and regulations so as not to cause undue hardship to the students, staff, and community.

During the 2024 regular Louisiana Legislative Session, the legislature enacted Revised Statutes §17:3992(D) from Act 172 of the session, which went into effect January of 2025. This amendment to the statute grants BESE the explicit authority to reconstitute a charter school's governing board when governance and financial deficiencies exist. La. R.S. §17:3992(D). Specifically, in section 3992(D)(1), the Louisiana legislature sought to present a more compassionate alternative to revocation of a charter school. *Id*. This section provides that a charter authority may under certain conditions reconstitute a board of a charter *as an alternative to revocation*, thus preventing undue hardship on all parties. *Id*. (Emphasis added). This alternative provided specifically by state law allows the charter to remain open, and to prevent undue hardship on students, staff, and community from a sudden closure of the school, loss of ability to attend classes and activities, loss of employment, and loss of a staple pillar in the community. To exercise this power to reconstitute a board, the charter authority must determine that the charter holder (charter operator) has committed at least one of five possible violations:

> (a) Committed a material and uncorrected violation of applicable law relative to the finances of the school or the health, safety, or welfare of the students enrolled at the school.
> (b) Failed to satisfy accountability provisions prescribed by the charter or the chartering authority.
> (c) Failed to meet generally accepted accounting standards of fiscal management.
> (d) Committed material violations of the bylaws of the organization or nonprofit laws of the state.
> (e) Is imminently insolvent as determined by the chartering authority.

*Id*.

Section 6.6.3 of the organization's existing charter contract also states that the parties intend to be bound by the agreement and subject to any and all future amendments or additions to

the statutes, regulations, policies and procedures applicable to charter schools; that the charter operator and BESE hereby agree to comply with any such change as if it were specifically set forth in the agreement; and that any such change *shall* supersede any provision of the agreement that is in conflict. (emphasis added).[25]

Here, BESE determined, in its own investigation and through a detailed audit performed and submitted by the LLA, that Education Explosion, Inc. had, at a minimum, done the following: (1) committed a material and uncorrected violation of applicable law relative to the finances of the school; (2) failed to satisfy accountability provisions prescribed by the chartering authority; and (3) failed to meet generally accepted accounting standards of fiscal management, over the course of multiple years. These findings directly align with violations in subsections (a), (b), and (c) of La. Rev. Stat. §17:3992(D)(1). To satisfy the statute requires *at least one* of these requirements to be present. In this instance, *multiple* elements of failure were identified. The presence of the three items identified by BESE and the LLA were more than sufficient to satisfy BESE's authority granted by statute to reconstitute the Board of Directors of the charter holder organization.

Furthermore, the ability of the charter authority, BESE, to review Education Explosion, Inc. and Impact Charter School and its past performance, compliance with regulations and laws, and compliance with the contract and other governance and operational requirements, existed prior to the findings submitted in the LLA audit.

The actions taken by BESE to reconstitute the Board of Directors of the organization is the less drastic alternative to resolve issues with governance, operations, finances, and compliance. It is the preferred alternative to revoking the charter completely, which would result in the closure of the school. It is clear, based on the charter contract and state law, that BESE has the authority to

---

[25] *Id.*

regulate the charter school, and to elect to renew or revoke the charter. It is also clear that BESE has the authority to reconstitute the board of the charter operator. In this instance, reconstituting the Board of Directors of the charter operator was done in order to maintain continuity of the school, to avoid injury to the parties, and most importantly, to avoid injury to the children who attend the school, as the less severe alternative to revocation of the charter. BESE's decision to reconstitute the board of the charter operator was completely in line with the authority granted to it under the state constitution, charter school law in the Revised Statutes, and the charter contract with the organization. Moreover, BESE's decision to reconstitute the board of the charter was also in the best interest of the public as the option that would cause the least harm so as to not disrupt the school, students, employees, staff, and the entire community that relies on the school and its operations. Thus, Plaintiff has failed to state a claim and Count II must be dismissed.

### iii. BESE's actions were not in violation of Federal Non-Profit Governance Law.

Plaintiff fails to state a claim as it relates to any violation of federal law. Education Explosion, Inc. is a non-profit organization that is incorporated under state law in Louisiana. The qualification of nonprofit 501(c)(3) status does not grant an organization protection under federal law to be exempt from governing state law, or in this particular instance, applicable state law. The charter contract under which the board of Education Explosion, Inc. and Impact Charter School are governed contains very specific compliance requirements that must be satisfied.

Indeed, the charter operator organization will only be allowed to govern a charter school in the state of Louisiana if it submits to the state law governing charter schools. The Board voluntarily submitted to that governance via its charter contract with BESE, which was signed by its authorizing agent at the time of entering into the agreement.[26] Sections 1.3.4, Section 2.28,

---

[26] *Id.*

2.20.1, 2.22.1, 5.3, and 6.6.3 are some examples of provisions in the charter contract that require the organization and the school's compliance.[27]

Plaintiff has failed to assert any violations of federal law against BESE. Plaintiff has also failed to identify any violations against BESE regarding the nonprofit 501(c)(3) tax exempt status that the organization holds. Plaintiff has also failed to establish any due process violations against BESE. Finally, Plaintiff has failed to allege that Louisiana law governing charter schools, and specifically La. Rev. Stat. 17:3992 is in conflict with federal law, or that the amendment of section 17:3992(D) during the Louisiana Legislature's 2024 session is in conflict with or in violation of any state or federal law.

BESE's oversight and authority over the organization has been repeatedly established by state law and the charter contract, and Plaintiff has not asserted a legal basis to challenge BESE's authority under the state law or as a violation of the charter contract with which it voluntarily consented to comply. Thus, Plaintiff has failed to state a claim and Count III must be dismissed.

**iv.   BESE did not violate the United States Constitution Contract Clause.**

Plaintiff fails to state a claim that BESE violated any clauses of the United States Constitution. Plaintiff's reference to the Contract Clause of the Constitution does not have any merit. When Plaintiff voluntarily entered into the legally binding Type 2 charter contract with BESE, it consented and expressly agreed to comply with BESE's authority and oversight, state law and all applicable charter law, as well as multiple provisions in the contract regarding the same. Moreover, Section 6.6.3 of the organization's charter contract states that the parties intend to be bound by the agreement and subject to any and future amendments or additions to the statutes, regulations, policies and procedures applicable to charter schools; that the charter operator and

---

[27] *Id.*

BESE hereby agree to comply with any such change as if it were specifically set forth in the agreement; and that any such change shall supersede any provision of the agreement that is in conflict.[28] Pursuant to this existing contract, the charter operator (the organization), agreed to be bound by any future amendment or addition to the governing statutes pertaining to the charter school, which includes the amendment of section (D) to 17:3992, which specifically allows BESE to reconstitute the board of the charter operator under specific conditions. There was no retroactive application of state law, as Plaintiff suggests. By entering into the charter contract with BESE, Plaintiff consented to BESE's oversight as a state agency and charter regulator, as well as to BESE's authority under state law.

Furthermore, BESE's actions aligned with the language of the charter contract, and within their rights and authority under the agreement. Finally, Plaintiff has not alleged that La. Rev.Stat. §17:3992(D) itself violates federal law or state law, because it does not. Plaintiff has not alleged that this statute is unconstitutional, because it is not. Nor has Plaintiff alleged that this statute impairs the charter contract with BESE. Thus, Plaintiff has failed to state a claim and Count IV must be dismissed.

### c. This Court Should Deny Plaintiff's Request for Injunctive Relief.

Finally, any and all of Plaintiff's requests for injunctive relief should be denied. Plaintiff's request and interests are contrary to the intent of the remedy of injunctive relief. Further, if the Court dismisses Plaintiff's claims in this matter for lack of subject matter jurisdiction or for failure to state a claim, then Plaintiff's request for injunctive relief is moot. In the Eastern District of Louisiana, the Court has found that because the defendant's motion to dismiss should be granted, the Court would deny the plaintiff's motion for preliminary injunction as moot. *See Bezet v. United*

---

[28] *Id*.

*States*, 276 F.Supp.3d 576, 579 (E.D.La.), aff'd, 714 F.App'x. 336 (5th Cir. 2017). In the Western District of Louisiana, the Court has found that the dismissal of the suit for lack of subject matter jurisdiction pursuant to a Rule(12)(b)(1) motion required the Court to deny the request for preliminary injunction as moot. *See City of Alexandria v. FEMA*, 781 F.Supp.2d 340, 342 (W.D.La. 2011).

Should the Court address Plaintiff's request for preliminary injunction, Plaintiff cannot satisfy the requirements for emergency injunctive relief, and the request should be denied.

In order to establish a claim for injunctive relief, Plaintiff must clearly show "(1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018). In this instance, Plaintiff cannot show that it will prevail on the merits; Plaintiff cannot show that irreparable injury will occur; the substantial injury to BESE and to the public greatly outweighs the harm that Plaintiffs would suffer, if any; and the public's interest would be best served by denying the injunction.

In this matter, it is evident that BESE's actions were taken under authority of the law, as well as in the best interest of the public, Impact Charter School, the students that attend the school, the teachers and staff of the school, and for the community that the school serves. Had BESE not made the decision to reconstitute the Board of Directors of the organization, the only other available option would have been to revoke the charter for the school, which would have closed the school, and done a vast disservice to the students, staff, and community. Thus, BESE's actions were the lesser alternative and least harmful option in order to serve the public's interests.

### i. Plaintiff is not likely to prevail on the merits.

Plaintiff cannot establish a prima facie showing that it is entitled to injunctive relief for all of the reasons stated above and incorporated here, and because it cannot show that it suffered harm from the reconstitution of the Board of Directors. Plaintiff has articulated no facts that rise to the level of the high burden necessary to establish injunctive relief.

Further, injunctive relief is not available in this context. In *Pelican Educ. Found., Inc. v. BESE*, the petitioner filed suit against BESE and alleged that BESE had improperly revoked the charter. However, the First Circuit of Louisiana stated that there was nothing in the school's charter contract or in Charter School Law "that supports a claim for either a writ of mandamus, injunctive relief, or a declaratory judgment. *Pelican Educ. Found., Inc.,* 97 So. 3d at 448–49. The First Circuit further found that "since BESE had the discretion to revoke the charter, issuance of a writ of mandamus is not relief available under the allegations or documents attached to the petition." *Id*. at 449. The Court also stated that the petitioner "failed to demonstrate that BESE's revocation was unlawful or to make the requisite showing of either irreparable harm or that it can prevail on the merits of the case so as to support issuance of any injunctive relief." *Id*. Likewise, Plaintiff here has failed to make such a showing in this matter.

### ii. Plaintiff has not established that it suffer irreparable harm if injunctive relief is denied.

Plaintiff alleges that irreparable harm would occur from BESE's actions to reconstitute the Board, and requests that this Court enjoin BESE's actions. However, Plaintiff's claims should be dismissed and an injunction should not be issued because Plaintiff has not and will not face irreparable harm from BESE's actions. Plaintiff has not identified any facts that support a claim of imminent or irreparable harm as is required under the law. For the reasons expressed above and incorporated here, Plaintiff has also failed to demonstrate that any tangible damage to the

organization has resulted from BESE's action. After BESE reconstituted the Board, the new Board of Directors immediately took steps to mitigate and rectify any potential risks of harm to the school and to the students. One of the first steps taken by the Board of Directors was to appoint an Interim Superintendent to lead the school through the transition and maintain any and all administrative and operational functions of the school to ensure that the school remains operational. Dr. Michelle Clayton ("Dr. Clayton") has taken her role very seriously and worked tirelessly to coordinate with all necessary parties to ensure that the school continues to operate, and most importantly, that students can continue to attend and learn.[29]

Although it cannot be denied that the school is facing difficulties in operations and access to some financial systems, it is evident that this harm has been caused by the interference of Ms. Scott and her continuous intentional disruptions, rather than the Board of Directors of the organization. Moreover, the Board of Directors and the Interim Superintendent have worked tirelessly to ensure that the school remains operational.[30] The staff and students have also witnessed the significant efforts of the current Board of Directors and the Interim Superintendent to ensure that all classes, activities, and operations at the school continue to the best of their ability.[31]

      **iii.  The harm to BESE and the public greatly outweighs any harm to Plaintiff.**

If the Court grants injunctive relief to Plaintiff, the students, the public, and the community would all suffer great harm, which is counterproductive to the intent of the remedy of injunctive relief. Injunctive relief would only serve the Plaintiff and Ms. Scott and allow her to continue to interfere with the operations of the school and to control the Board of Directors, rather than to

---

[29] *See* Interested Parties' Exhibit 8, Affidavit of Bryant Hamilton.
[30] *Id.*
[31] *Id.*

advance the best interests of the students, the public, and BESE. If the Court grants injunctive relief to Plaintiff, BESE may exercise its authority under state law and the charter contract to revoke the charter based upon the significant governance and compliance issues, which would cause great harm to the community. BESE's action to reconstitute the Board as the lesser alternative to revoking the school's charter serves to avoid harm to the school and to the students, and it ensures that the school remains open.

### iv. Denying injunctive relief is in the best interest of the public and the community.

Denying injunctive relief is in the best interest of the public and the community, as discussed above and incorporated here. In addition, if the Court grants injunctive relief to Plaintiff, this would be a great disservice to the students, the staff, the public, and the community, which is counterproductive to the intent of the remedy of injunctive relief. BESE's action to reconstitute the Board ensured that the school remains open and operational, rather than the more severe alternative provided by state law to revoke the school's charter in these circumstances. BESE's decision was in the best interest of the public to avoid any harm to the school, to the students, and to the community that the school serves.

### v. Plaintiff is not authorized to bring or continue any legal action on behalf of Education Explosion, Inc. or Impact Charter School.

Counsel of record for Plaintiff, Mr. Haley, is unauthorized to represent Education Explosion, Inc. or Impact Charter School. On February 24, 2025, the Board of Directors of Education Explosion, Inc. retained undersigned counsel to serve as counsel of record for Education Explosion, Inc. and Impact Charter School. Mr. Haley is no longer authorized to represent the organization or the school in any legal proceedings.[32] On February 25, 2025, Mr. Haley was also

---

[32] *See* Interested Parties Exhibit 2.

notified not to initiate any actions, filings, or claims on behalf of Education Explosion, Inc. or Impact Charter School, and he was requested to take all necessary steps to withdraw from any and all cases pending with any court.[33] In spite of this, Mr. Haley has pursued this litigation as the unauthorized representative on behalf of an unauthorized group of people who now constitute an unauthorized board. This group is actively working against the organization and the school. Because BESE had the authority  to move forward with the reconstitution of the board of the organization, Plaintiff's claims filed by Mr. Haley should be dismissed.

Mr. Haley has also represented Ms. Scott in prior state court proceedings as well as in other administrative matters, on behalf of the organization and in her individual capacity. The Board send notice to Ms. Scott of administrative leave on February 25, 2025.[34] After repeated behavior which failed to comply with the conditions of the administrative leave, the Board terminated Ms. Scott's employment as the CEO of the organization on March 7, 2025.[35] Mr. Haley's client's interests are aligned only with Ms. Scott at this time. His client's interest are in direct conflict with the interests of Education Explosion, Inc. and are also in direct conflict with Impact Charter School.

Finally, the Board of Directors of Education Explosion no longer desires to proceed with this suit filed by Mr. Haley, as it is  not in the best interest of the continued operations of Education Explosion, Inc. and Impact Charter School.

---

[33] *Id*.
[34] *See* Interested Parties' Exhibit 5.
[35] *See* Interested Parties' Exhibit 7.

## V.       CONCLUSION

For the above stated reasons, INTERESTED PARTIES, EDUCATION EXPLOSION, INC. and IMPACT CHARTER SCHOOL, respectfully request that this Honorable Court DISMISS all of Plaintiff's claims against BESE with prejudice, and that BESE's motion be granted against Complainants.

Respectfully submitted,

**Transcendent Law Group, LLC**

_/s/  Michelle Craig_
Michelle D. Craig, #28004
Priya Kumar, #36311
3726 Canal Street, Suite A
New Orleans, Louisiana 70119
P: (504) 459-4557
F: (504) 814-4502
mcraig@tlg.law
pkumar@tlg.law

_Counsel for Interested Parties:_
**_Education Explosion, Inc._**
**_and Impact Charter School_**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which provides notice of filing to all counsel of record, on this 31st day of March, 2025.

_/s/  Michelle Craig_