UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDUCATION EXPLOSION, INC. d/b/a
IMPACT CHARTER

VERSUS

LOUISIANA BOARD OF ELEMENTARY
AND SECONDARY EDUCATION

CIVIL ACTION

NO. 25-163-JWD-RLB

**RULING AND ORDER**

This matter comes before the Court on two motions. The first is the *Motion for Temporary Restraining Order* (Doc. 2) (*"Motion for Preliminary Injunction"* or *"MPI"*) filed by Plaintiff Education Explosion, Inc. d/b/a Impact Charter School ("Plaintiff," "Education Explosion," or "Original Board"). In response, Defendant, Louisiana Board of Elementary and Secondary Education ("Defendant" or "BESE") filed a *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim* (Doc. 14) ("*MTD*") that opposes the *MPI*. Plaintiff has filed a combined opposition to the *MTD* and reply to the *MPI*. (Doc. 22.) Defendant did not file a reply to the *MTD*. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *MTD* is granted, and the *MPI* is denied as moot.

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The following factual allegations are primarily taken from the *Verified Complaint* ("*Complaint*"), (Doc. 1). In considering a "facial attack" on subject matter jurisdiction, "the allegations in the complaint . . . are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

In 2014, Dr. Chakesha Scott ("Dr. Scott") started Impact Charter School in Baker, Louisiana, pursuant to a charter agreement with BESE. (Doc. 1 at 1.) On February 21, 2025, BESE removed Impact's Board of Directors, replacing them with state appointees ("Replacement Board"). (*Id.*) Plaintiff filed suit on February 23, 2025, (Doc. 1) and moved for a temporary restraining order and preliminary injunction the same day (Doc. 2).

Plaintiff first claims that the reconstitution of the board violates due process, as there was no "sufficient notice," no "fair hearing," and no opportunity to be heard. (Doc. 1 at 3.) The second claim is that Louisiana Revised Statutes § 17:3996, which provides that charter schools "be organized and operated as self-governing non-profit organizations . . . [,]" prohibited Defendant's attempt to reconstitute the board. (*Id.*) The third claim is that Plaintiff's status as a 501(c)(3) organization prevents Defendant from reconstituting the board without due process. (*Id.*) The fourth and final claim is that "[t]he retroactive application of a new state law to justify the reconstruction of Impact's Board violates the terms of the original charter contract, and thus, violates the Contracts Clause." (*Id.* at 4.)

Three days after the suit was filed, a new attorney moved to enroll as counsel of record for Plaintiff and filed a *Motion to Dismiss with Prejudice* ("*MTDP*") (Doc. 8). In the *MTDP*, the new attorney attempted to dismiss Plaintiff's claims and request for a temporary restraining order. (*Id.* at 3.) At a status conference the following day, the new attorney informed the Court that the *MTDP* was filed on behalf of the Replacement Board, not the Original Board that had filed suit. (Doc. 12 at 2.) The Court declined to rule on the *MTDP* at the time, as it concerned the central issue of the case: which board has true authority to act on behalf of Plaintiff? (*Id.*) The Court denied that part of the *MPI* which requested a temporary restraining order but did not rule on the request for preliminary injunction. (*Id.*)

## II.    RULE 12(B)(1) STANDARD

In a Rule 12(b)(1) motion, a party may raise the defense of lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But, "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010; *see also Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.* with approval).

There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Relevant here, "[a] facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate General of the State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a "facial attack," the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523. Whereas,

3

"[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citation omitted). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* When a factual attack is made, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and ... prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

### III. DISCUSSION

#### a. Parties' Arguments

##### i. MTD (Doc. 14)

###### 1. 12(b)(1)

Defendant first argues that the Court lacks subject matter jurisdiction because the suit is barred by sovereign immunity. (Doc. 14-1 at 7.) As a state agency, Defendant says it is entitled to sovereign immunity. (*Id.* (citing *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *Moore v. Louisiana Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014)).) It contends that the only way Plaintiff could proceed with this suit would be through the *Ex parte Young* exception to sovereign immunity, which would not apply because *Ex parte Young* "has no application in suits against . . . States and their agencies . . . ." (*Id.* at 7–8 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)) (internal quotation marks omitted).) Further, Defendant argues that Plaintiff is seeking "a retrospective declaration that

4

BESE '*violated* Impact's right[,]' " which is not an available remedy under *Ex parte Young*. (*Id.* at 8 (quoting Doc. 1 at 2; *Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023)).)

Defendant likens this case to *Moore*, where the Fifth Circuit found that *Ex parte Young* did not apply to BESE—Defendant here—because it is not an individual officer as required by *Ex parte Young*. (*Id.* (citing 743 F.3d at 963).) Defendant argues that Plaintiff has not and likely cannot identify "a valid waiver or congressional abrogation of immunity." (*Id.* at 8–9.) Therefore, the claims must be dismissed. (*Id.* at 9.)

2. 12(b)(6)

Defendant argues that, even if the Court finds that the suit is not barred by sovereign immunity, Plaintiff has failed to state a claim for which relief may be granted. (*Id.*) First, it says that Plaintiff's claim under 42 U.S.C. § 1983 fails because Defendant is not a "person" under the meaning of the statute. (*Id.* at 10.) Defendant cites to *Will v. Michigan Dept. of State Police*, which says "[n]either States nor state officials acting in their official capacities are 'persons' within meaning of § 1983." (*Id.* (citing 491 U.S. 58 (1989) (internal citations omitted)).) Defendant further says that "Plaintiff has not identified a cognizable property or liberty interest that is protected by the Fourteenth Amendment. Instead, Plaintiff's claim is premised on a regulatory action taken pursuant to state law." (*Id.* at 10–11.) Even if there were a property interest, Defendant maintains that Plaintiff's claims would still fail because Plaintiff was given notice of the hearing about reconstituting the board, and a member of the Original Board was allowed to present arguments at that hearing. (*Id.* at 11.) Defendant argues that Plaintiff's allegations are conclusory and do not satisfy the *Twombly* and *Iqbal* tests. (*Id.*)

Next, Defendant contends that "Plaintiff's claim under Louisiana Charter School Law is barred by sovereign immunity because federal courts lack jurisdiction to enforce state law against

5

state agencies." (*Id.* at 12 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).) It says that a suit challenging its authority under Louisiana Revised Statute § 17:3992(D) should be brought in state court, because it is purely a state issue. (*Id.*)

Next, Defendant argues that Plaintiff's status as a 501(c)(3) organization has no bearing on its susceptibility to state regulation. (*Id.* at 12–13.) Defendant looks to Plaintiff's *Complaint*, saying that Plaintiff does not provide a law that Defendant violated or identify any support for its contention that § 17:3992(D) conflicts with federal law. (*Id.* at 13.)

Finally, Defendant says that Plaintiff's Contracts Clause claim lacks merit. (*Id.*) It cites to the agreement between it and Plaintiff, whereby the parties agreed to be bound by "any and all future amendments or additions to the statutes, regulations, policies and procedures applicable to charter schools." (*Id.* (citing Doc. 14-3 at 23).) The amendment at issue is Louisiana Revised Statutes § 17:3992(D), as amended in the 2024 Regular Legislative Session. (*Id.* at 14.) The new section gives BESE the authority to reconstitute a charter school board under certain circumstances. (*Id.*) Plaintiff agreed to be bound by any amendments to Louisiana law in the Charter Contract Section 6.6.3. (*Id.*) Defendant argues that this amendment does not impair the charter contract, because the provision is incorporated into the agreement. (*Id.*)

### ii. *Opposition* (Doc. 22)

#### 1. 12(b)(1)

Plaintiff argues that its claims are not barred by sovereign immunity. (Doc. 22 at 2.) It contends that while, generally, the Eleventh Amendment would bar this suit, here, the *Ex parte Young* exception does apply. (*Id.* at 2–3.) Plaintiff cites a Ninth Circuit case which held that a suit "against administrators in their official capacities" was proper because the plaintiff sought prospective injunctive or declaratory relief. (*Id.* at 3 (citing *Jensen v. Brown*, 131 F.4th 677, 688

6

(9th Cir. 2025)).) Plaintiff contends that it is seeking prospective injunctive relief, because it wishes to stop Defendant's "hostile takeover[.]" (*Id.*)

Further, Plaintiff insists that *Ex parte Young* applies here because there is an ongoing violation of federal law. (*Id.*) Plaintiff ends this section by saying "[f]ederal courts retain jurisdiction over constitutional claims against state entities. BESE's sovereign immunity argument does not apply to claims based on federal constitutional violations (Contracts Clause, Due Process, and Takings Clause). Since BESE's actions directly impact federal rights, they cannot shield themselves from accountability through immunity." (*Id.* at 4.)

2. 12(b)(6)

Regarding its § 1983 claim, Plaintiff argues that Defendant, a state agency, may be sued under § 1983 "when individual actors functioning in its employ willfully violate the rights of the Petitioner while exercising power given to them by the State, which they have done in this particular matter." (*Id.*) Plaintiff claims that the "person" definition only prevents it seeking damages from Defendant, and it may seek injunctive relief through the statute. (*Id.*) It says that it has stated a liberty and property interest: (1) "the unilateral stripping of the rights of the elected board members of Education Explosion" and (2) "the reconstitution of the board with a new board hand-selected by BESE strips Education Explosion, Inc. control of (but not limited to) [its] bank accounts, inventory, books, electronic property absolutely constitutes the deprivation of property, which is specifically in direct violation of provisions set forth in La. R.S. 17:3991(H) . . . ." (*Id.* at 4–5.) Plaintiff argues that whether notice and an opportunity to be heard were given "is of no consequence" because § 17:3992(D) is unconstitutional. (*Id.* at 5.) Plaintiff contends that Defendant may not "reconstitute the board of a federal non-profit private corporation . . . [,]" and that any attempt to reconstitute the board is unconstitutional. (*Id.*)

7

As to the claim that Defendant has violated Louisiana charter school law, Plaintiff refers to its arguments above that "the rights of liberty and property that were violated by the Louisiana Charter School law gives them the right to sue in federal court." (*Id.* at 5–6.)

Plaintiff says that "[t]he reconstitution of the board of Education Explosion by a state licensing agency goes well beyond state oversight and is an abuse of power by the state." (*Id.* at 6.) It agrees that its status as a 501(c)(3) company does not exempt it from state oversight but argues that the state has gone too far here. (*Id.*) Plaintiff says that this would set a bad precedent, "open[ing] the door for all government licensing agencies from taking over private corporations." (*Id.*)

Finally, Plaintiff argues that § 3992(D) violates the Contracts Clause. (*Id.* at 7.) It lays out the three step test for whether a law violates the Contracts Clause: "[f]irst, the state regulation must not substantially impair a contractual relationship. Second, the State 'must have a significant and legitimate purpose behind the regulation, such as the remedying of a broad and general social or economic problem.' Third, the law must be reasonable and appropriate for its intended purpose." (*Id.* (quoting *Energy Rsrvs. Grp. v. Kansas Power and Light Co.*, 459 U.S. 400, 411–12 (1983)).)

Plaintiff says that the reconstitution substantially impaired "several contractual relationships between the board, the CEO (Dr. Chakesha Scott), and several vendors that supplied services to Impact Charter School." (*Id.*) It claims—for the first time—that the Replacement Board has terminated contractual relationships with vendors and created new contractual relationships with other vendors. (*Id.*) Plaintiff argues "there is no legitimate purpose behind the extreme measure of the reconstitution of a private corporation's board, and the law is unreasonable and inappropriate for its intended purpose." (*Id.*) Finally, Plaintiff says that the Court should review

8

this challenge with a higher level of scrutiny because the state modified its own contract. (*Id.* at 7–8 (citing *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977)).)

### iii. *Replacement Board's Brief* (Doc. 23)

The Replacement Board was allowed to submit a brief in response to the *MTD*. (Doc. 17.) It largely repeats Defendant's arguments on sovereign immunity, arguing that Defendant is immune from suit and the *Ex parte Young* exception does not apply. (Doc. 23 at 7–8.) It also repeats Defendant's arguments against Plaintiff's due process claim. (*Id.* at 8–11.)

Regarding Plaintiff's Louisiana charter school law claim, the Replacement Board says that "Louisiana law specifically provides for the governance and requirements related to regulating charter schools." (*Id.* at 11 (citing La. R.S. 17:3981, *et seq*; La. Const. art. VIII § 3).) It argues that the Louisiana Constitution provides that Defendant has the authority to oversee and manage failing schools. (*Id.* (citing La. Const. art. VIII § 3(A)).) Defendant is empowered to revoke or terminate a charter upon a finding of misconduct. (*Id.* at 12.) The Replacement Board says that this authority is incorporated into the agreement between Plaintiff and Defendant. (*Id.* at 11–12.) It looks to the grounds for revocation of a charter and says that the reconstitution of the board of a charter school—a less extreme option in response to potential misconduct—reduces hardship on the parties. (*Id.* at 13.)

> The Replacement Board argues that audits done by Defendant showed that Plaintiff:
>
> (a) Committed a material and uncorrected violation of applicable law relative to the finances of the school or the health, safety, or welfare of the students enrolled at the school.
> (b) Failed to satisfy accountability provisions prescribed by the charter or the chartering authority.
> (c) Failed to meet generally accepted accounting standards of fiscal management.

(*Id.* at 13–14 (quoting La. R.S. § 17:3992(D)).) Therefore, Defendant argues, it was justified in reconstituting the board, and it did so in the best interest of the school. (*Id.* at 14–15.)

9

The Replacement Board says that Plaintiff submitted to Defendant's authority when it entered into the charter agreement, and its status as a 501(c)(3) organization has no bearing on its compliance with Louisiana law. (*Id.* at 15–16.) Like Defendant, the Replacement Board argues that Plaintiff has not identified a federal law with which § 3992 conflicts. (*Id.*)

Finally, the Replacement Board repeats Defendant's arguments regarding the Commerce Clause claim. (*Id.* at 16–17.)

### b. Law and Analysis

"Generally, 'sovereign immunity bars private suits against nonconsenting states in federal court.'" *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)). "This bar also applies to suits like this one 'against state officials or agencies that are effectively suits against a state.'" *Id.* (quoting *Paxton*, 943 F.3d at 997). "Under the *Ex parte Young* exception to sovereign immunity, however, a plaintiff can seek prospective injunctive relief 'against individual state officials acting in violation of federal law.'" *Id.* (quoting *Paxton*, 943 F.3d at 997 (citation omitted)). "Only state officials, not state agencies, may be enjoined." *Moore*, 743 F.3d at 963 (citing *Metcalf & Eddy, Inc.*, 506 U.S. at 146).

In *Moore*, the Fifth Circuit addressed the issue of sovereign immunity for BESE—Defendant here—and the Louisiana Department of Education. *Id.* The court said, "[t]he *Young* exception 'has no application in suits against the States and *their agencies*, which are barred regardless of the relief sought." *Id.* (citing *Metcalf & Eddy*, 506 U.S. at 146). It held that BESE and the Louisiana Department of Education were "not individual officers, but rather agencies of the state[,]" and were protected by sovereign immunity. *Id.* at 963–64.

*Moore* is directly applicable here. Plaintiff only named BESE, a state agency, as defendant. The *Ex parte Young* exception only applies to state officials, not state agencies. *Metcalf & Eddy*,

10

506 U.S. at 146. No state officials were named in this suit. Thus, Plaintiff may not assert the *Ex parte Young* exception to sovereign immunity, and this Court lacks jurisdiction over this action.

Further, Plaintiff's contention that sovereign immunity may not be invoked for constitutional violations lacks merit.

> There is a plausible argument that the Fourteenth Amendment automatically overrode the Eleventh Amendment because it was ratified later. Section 1 of the Fourteenth Amendment provides that no state may deprive any person of life, liberty, or property without due process of law and that no state may deny equal protection of the laws or deny privileges and immunities. If the Fourteenth Amendment automatically overrode the Eleventh, any claim against a state for alleged deprivation of a right protected by the Fourteenth Amendment could be brought in federal court, without congressional action.
>
> **But this has never been the law.** Rather, § 5 of the Fourteenth Amendment—the "enforcement provision"—permits Congress to abrogate sovereign immunity. Section 5 provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." In *Ex parte Virginia*, the Court, through Justice Stephen Field, explained: "Were it not for the fifth section of that amendment, there might be room for argument that the first section is only declaratory of the moral duty of the State * * *. But the Constitution now expressly gives authority for congressional interference and compulsion in the cases embraced within the Fourteenth Amendment."
>
> Clearly, then, the Fourteenth Amendment does not operate automatically to trump the Eleventh Amendment. But the Fourteenth Amendment changed the relationship between the federal and state governments by allowing Congress to strip states of immunity by acting under § 5 of the Fourteenth Amendment.

13 Richard D. Freer, *Federal Practice & Procedure* § 3524.5 (3d ed. 2025) (citations omitted) (emphasis added). *Ex parte Young* itself dealt with the enforcement of an unconstitutional law, and whether there was an exception to sovereign immunity for state officials. 209 U.S. 123, 167 (1908). Plaintiff identifies no authority for the assertion that sovereign immunity does not apply to constitutional claims made directly against the state or state agencies.

Constitutional violations in and of themselves do not abrogate sovereign immunity. *See* Freer, *supra*. Congress must explicitly abrogate sovereign immunity, pursuant to its power granted

by Section 5 of the Fourteenth Amendment. *Id.* Even 42 U.S.C. § 1983, under which Plaintiff asserts a claim, does not abrogate sovereign immunity, because it does not apply to states or state officials in their official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). *See also Lumpkins v. Office of Cmty. Dev.*, 621 Fed. App'x 264, 268 (5th Cir. 2015). Plaintiff has not identified any valid abrogation of sovereign immunity. Therefore, the *MTD* will be granted, though leave to amend will be granted.

Because the Court is granting the *MTD* based on its finding that Defendant is protected by sovereign immunity, thus depriving the Court of jurisdiction, the *MPI* is denied. The *MTDP*, filed by the Replacement Board, is denied for the same reason.

### IV.     LEAVE TO AMEND

Plaintiff requested leave to amend in the event the Court found the *Complaint* deficient, either because Defendant is not a person for purposes of § 1983 or because its claims against Defendant are barred by sovereign immunity. (Doc. 22 at 3–4.) Considering that this is the first time the Court has ruled on a motion to dismiss the operative complaint, the Court agrees that Plaintiff should be given leave to amend.

When faced with defective allegations, the Court "should freely give a complainant . . . leave to amend[.]" *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995) (citing Fed. R. Civ. P. 15(a) as grounds for allowing amendment to cure defective allegations in a pleading).

The Fifth Circuit has stated:

> It is provided . . . by 28 U.S.C.A. § 1653 that: 'Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.' The theory seems to be that 'if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, * * * the formal defect in the pleadings did not deprive the Court of jurisdiction at the time when the action was filed, if such defect was later corrected.' *Stern v. Beer*, 6 Cir. 200 F.2d 794, 795. Cf. *Finn v. American Fire & Casualty Co.*, 5 Cir. 207 F.2d 113, 115.

*Kaufman v. W.U. Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955). Section 1653, "like rule 15(a), should be liberally construed." *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981).

Here, Plaintiff's claims are barred by sovereign immunity. Therefore, they will be dismissed without prejudice. *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."). Plaintiff has not previously amended its *Complaint*. Therefore, the Court will allow Plaintiff leave to amend the *Complaint*.

The question remains: which is the proper party to amend the *Complaint*, the Original Board or the Replacement Board? The Court ordered briefing on the issue of which board is the proper board to act on Plaintiff's behalf. (Doc. 37.) The parties submitted briefing discussing the merits of whether the Original Board was properly replaced. (Docs. 38, 39, 40, 41, 42.) However, the Court will refrain from deciding this issue at this time.

The parties do not dispute that the Replacement Board has taken over operation of Education Explosion. (Doc. 14-1 at 15–16; Doc. 22 at 8.) At this point, the Replacement Board is in control of Education Explosion and is making decisions for it. (*See id.*) Therefore, the Replacement Board is factually acting on Plaintiff's behalf, until the Court comes to a decision on the merits of Plaintiff's allegations. For the purposes of this litigation, the Replacement Board is Plaintiff. To avoid confusion, the Replacement Board will hereafter be referred to as the Replacement Board Plaintiff. The Replacement Board Plaintiff will be given leave to amend the *Complaint*, should it choose to do so.

The Court issued a notice on June 25, 2025, allowing the members of the Original Board "to file a motion to intervene in this case and assert any claims they may have against BESE or the

Replacement Board." (Doc. 43.) Five members of the Original Board (hereinafter "Intervenors") filed a *Motion to Intervene* on July 9, 2025. (Doc. 44.) The motion is still pending. If the motion to intervene is granted and the Intervenors are allowed to join this suit as plaintiffs, they will be allowed to file an amended complaint in intervention naming a proper defendant.

Although the main demand in this case will be dismissed without prejudice, the *Motion to Intervene* will remain pending. *See DeOtte v. Nevada*, 20 F.4th 1055, 1066 (5th Cir. 2021) ("We have held that intervention can be permitted even after dismissal of the case.") The parties must file any amended complaint or amended complaint in intervention within twenty-eight (28) days of this Court's ruling on the *Motion to Intervene* (Doc. 44). Failure to cure the deficiencies will likely result in the dismissal of this case from the Court. It is likely that the dismissal of Replacement Board Plaintiff's claims will not result in the dismissal of Intervenors' claims, so long as there is an independent ground for jurisdiction. *See* 7C Mary Kay Kane and Allan Stein, *Federal Practice and Procedure* § 1920 (3d ed. 2025) ("The case law is scanty and unsatisfactory on when and whether a claim of an intervenor can proceed to decision after a dismissal of the original action. It is clear that this is proper if there are independent grounds for jurisdiction of the intervenor's claim.")

V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim* (Doc. 14) brought by Defendant Louisiana Board of Elementary and Secondary Education is **GRANTED** as to lack of subject matter jurisdiction and Plaintiff's claims against Defendant are **DISMISSED WITHOUT PREJUDICE;**

**IT IS FURTHER ORDERED** that the Replacement Board Plaintiff and any intervening plaintiffs shall have twenty-eight (28) days from the Court's ruling on the *Motion to Intervene* (Doc. 44) in which to cure the above deficiencies;

**IT IS FURTHER ORDERED** that the *Motion for Temporary Restraining Order* (Doc. 2) is **DENIED AS MOOT;**

**IT IS FURTHER ORDERED** that the *Motion to Dismiss with Prejudice* (Doc. 8) is also **DENIED AS MOOT.**

Signed in Baton Rouge, Louisiana, on July 28, 2025.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**