UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EDUCATION EXPLOSION, INC. d/b/a | * | CIVIL ACTION NO. 25-CV-00163-JWD-RLB |
| IMPACT CHARTER | * | |
| *Plaintiff* | * | |
| | * | JUDGE JOHN W. deGRAVELLES |
| VERSUS | * | |
| | * | |
| LOUISIANA BOARD OF ELEMENTARY | * | MAGISTRATE RICHARD L. BOURGEOIS, JR. |
| AND SECONDARY EDUCATION | * | |
| *Defendant* | * | |
| | * | |
| c/w | * | |
| | * | |
| DR. CHAKESHA SCOTT | * | CIVIL ACTION NO. 25-CV-00888-JWD-RLB |
| *Plaintiff* | * | |
| | * | |
| VERSUS | * | |
| | * | |
| TAVARES A. WALKER IN HIS | * | |
| INDIVIDUAL CAPACITY AND IN HIS | * | |
| OFFICIAL CAPACITY AS EXECUTIVE OF | * | |
| THE LOUISIANA STATE BOARD OF | * | |
| ELEMENTARY AND SECONDARY | * | |
| EDUCATION ("BESE"), et al. | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**PAUL HOLLIS, DR. SHARON LATTEN CLARK, SANDY HOLLOWAY,
STACEY MELERINE, LANCE HARRIS, RONNIE MORRIS, KEVIN BERKEN,
PRESTON CASTILLE, CONRAD APPEL, DR. JUDY ARMSTRONG, AND
<u>SIMONE CHAMPAGNE'S RULE 12(b)(6) MOTION TO DISMISS</u>**

**NOW INTO COURT**, through undersigned counsel, comes Defendants, Paul Hollis, Dr.

Sharon Latten Clark, Sandy Holloway, Stacey Melerine, Lance Harris, Ronnie Morris, Kevin

Berken, Preston Castille, Conrad Appel, Dr. Judy Armstrong, and Simone Champagne

(collectively, "Defendants" or "BESE Board"), who respectfully move this Honorable Court for

an Order dismissing all of the claims asserted in the Complaint in Intervention ("Complaint in

Intervention") (R. Doc. 53) filed by Intervenor Plaintiffs, Eugene Collins, Tammy Clark, Jacqueline Huggins, Gwendolyn McClain, and Lakeisha Robertson (collectively, the "Original Board"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Even viewed in the light most favorable to the Original Board, the broad and conclusory allegations against the Defendants within the Original Board's Complaint lack any colorable basis in law and do not allege facts that, if proven, would state a claim for relief. Further, the claims asserted by the Original Board are barred by the Eleventh Amendment and the qualified immunity afforded to the Defendants.

In support of this Motion to Dismiss, Defendants submit their Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss, filed contemporaneously herewith, as though copied herein in extenso. Defendants also submit the following exhibits:

Exhibit 1:    Declaration of Tavares Walker, including the Exhibits "A-H" attached thereto;

Exhibit 2:    Unjust School Takeover Newsletter, February 20, 2025, also available at https://app.smore.com/n/d74m8; and

Exhibit 3:    Type 2 Renewal Charter Contract entered into by Education Explosion Inc., and the Louisiana Board of Elementary and Secondary Education, July 1, 2022.

**WHEREFORE**, Defendants, Paul Hollis, Dr. Sharon Latten Clark, Sandy Holloway, Stacey Melerine, Lance Harris, Ronnie Morris, Kevin Berken, Preston Castille, Conrad Appel, Dr. Judy Armstrong, and Simone Champagne, pray that this Court grant their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and issue an Order dismissing the Original Board's claims against the Defendants, with prejudice, at the Original Board's costs. Defendants further pray for any and all other relief in which they are entitled.

Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

BY: */s/ Stephen L. Miles*  _____
    Stephen L. Miles, 31263
    Emily E. Ross, 34739
    Alease T. Scott, 37533
    PIPES | MILES | BECKMAN, LLC
    1100 Poydras Street, Suite 3300
    New Orleans, LA 70163
    Telephone: 504-322-7070
    Facsimile: 504-322-7520
    smiles@pipesmiles.com
    eross@pipesmiles.com
    ascott@pipesmiles.com

    *and*

    Carey T. Jones (#07474)
    Amanda M. LaGroue (#35509)
    Assistant Attorney Generals
    Louisiana Department of Justice
    P.O. Box 94005
    Baton Rouge, LA 70802
    Telephone: (225) 326-6060
    Fax: (225) 326-6098
    Email: jonescar@ag.louisiana.gov
            LaGroueA@ag.louisiana.gov

    *Counsel for Defendants,*
    *Paul Hollis, Dr. Sharon Latten Clark,*
    *Sandy Holloway, Stacey Melerine, Lance*
    *Harris, Ronnie Morris, Kevin Berken,*
    *Preston Castille, Conrad Appel,*
    *Dr. Judy Armstrong, and*
    *Simone Champagne*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EDUCATION EXPLOSION, INC. d/b/a | * | CIVIL ACTION NO. 25-CV-00163-JWD-RLB |
| IMPACT CHARTER | * | |
| *Plaintiff* | * | |
| | * | JUDGE JOHN W. deGRAVELLES |
| VERSUS | * | |
| | * | |
| LOUISIANA BOARD OF ELEMENTARY | * | MAGISTRATE RICHARD L. BOURGEOIS, JR. |
| AND SECONDARY EDUCATION | * | |
| *Defendant* | * | |
| | * | |
| c/w | * | |
| | * | |
| DR. CHAKESHA SCOTT | * | CIVIL ACTION NO. 25-CV-00888-JWD-RLB |
| *Plaintiff* | * | |
| | * | |
| VERSUS | * | |
| | * | |
| TAVARES A. WALKER IN HIS | * | |
| INDIVIDUAL CAPACITY AND IN HIS | * | |
| OFFICIAL CAPACITY AS EXECUTIVE OF | * | |
| THE LOUISIANA STATE BOARD OF | * | |
| ELEMENTARY AND SECONDARY | * | |
| EDUCATION ("BESE"), et al. | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**PAUL HOLLIS, DR. SHARON LATTEN CLARK, SANDY HOLLOWAY,
STACEY MELERINE, LANCE HARRIS, RONNIE MORRIS, KEVIN BERKEN,
PRESTON CASTILLE, CONRAD APPEL, DR. JUDY ARMSTRONG, AND
SIMONE CHAMPAGNE'S MEMORANDUM IN SUPPORT OF THEIR
<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

**MAY IT PLEASE THE COURT**:

Defendants, Paul Hollis, Dr. Sharon Latten Clark, Sandy Holloway, Stacey Melerine,

Lance Harris, Ronnie Morris, Kevin Berken, Preston Castille, Conrad Appel, Dr. Judy Armstrong,

and Simone Champagne (collectively, "Defendants" or "BESE Board"), through undersigned

counsel, respectfully submit this Memorandum in Support of their Rule 12(b)(6) Motion to

Dismiss for failure to state a claim upon which relief may be granted, all of the claims asserted in the Complaint in Intervention ("Complaint"), filed by Intervenor Plaintiffs, Eugene Collins, Tammy Clark, Jacqueline Huggins, Gwendolyn McClain, and Lakeisha Robertson (collectively, the "Original Board").

The claims asserted by the Original Board should fail for numerous reasons, chief among them being they cannot overcome the sovereign and qualified immunity bars. Even if those hurdles could be overcome, the Original Board members have not and cannot point to any statute or jurisprudence that manifests in volunteer, unpaid non-profit board members a vested property right requiring due process to continue to volunteer. And in any event the complaint fails to allege facts sufficient to state a claim for a due process violation or any other claim. The Complaint should be dismissed.

## I.    BACKGROUND

The intervenors were members of the governing board of Education Explosion, Inc. ("Education Explosion"), a nonprofit corporation that operates under the trade name Impact Charter School. Impact Charter School is located in Baker, Louisiana, and is authorized by the Louisiana Board of Elementary and Secondary Education ("BESE"). BESE is an eleven-member state board established by the 1974 Louisiana Constitution and charged with oversight of schools across the state.[1] The Defendants, sued in their official and individual capacities, are BESE board members.

On February 5, 2025, the Louisiana Legislative Auditor ("LLA") issued an investigative audit report titled "East Baton Rouge Parish Charter School – Education Explosion, Inc. d/b/a Impact Charter School" Control No. 50230012 (the "audit").[2] The report detailed a forensic financial audit

---

[1]    *See* La. Const. Art. VIII, §3.

[2]    Exhibit 1, Declaration of Tavares Walker ("Walker Declaration"), attaching Michael J. Waguespack, Louisiana Legislative Auditor, Audit Report, Control No. 50230012, titled "East Baton Rouge Parish Charter School – Education Explosion, Inc. d/b/a Impact Charter School" as Exhibit "A" thereto. *See also* Exhibit 1,

of Impact Charter School, along with very serious findings of financial misconduct by the school's

Chief Executive Officer ("CEO"), Dr. Chakesha Scott ("Dr. Scott").

Following this audit, the Original Board was invited to meet with BESE staff and BESE's

President to discuss the serious findings in the audit.[3] Only the Original Board's attorney attended

that meeting.[4] The Executive Director of BESE, Tavares Walker, then issued a series of letters to the

Original Board dated February 10, 2025, February 11, 2025, February 12, 2025, and February 18,

2025, wherein certain documentation were requested to be provided to explain the full financial

picture of Impact Charter.[5] Because the Original Board failed to adequately respond to the multiple

requests for information, on February 19, 2025, BESE, pursuant to its authority as the charter

authorizer of Impact Charter, provided a Notice of Public Hearing to the Original Board and informed

the Original Board that on February 21, 2025 at 9:00 a.m. CST, it intended to "convene and conduct

a public hearing concerning the reconstitution of the board of Education Explosion, Inc. pursuant to

Louisiana Revised Statutes 17:3992(D) and Bulletin 126."[6]

The following day, on February 20, 2025, Impact Charter School released a newsletter

entitled "Unjust School Takeover."[7] In that newsletter, Impact Charter stated that "the Board of

Elementary and Secondary Education (BESE) and the Louisiana Department of Education

(LDOE) is attempting to **forcefully reconstitute our board** and strip away local control."[8] The

---

Walker Declaration, attaching Exhibit "B," Summary of the Audit of Education Explosion, Inc. d/b/a Impact Charter School, titled "Report Highlights."

[3]    Exhibit 1, Walker Declaration, attaching Exhibit "H," Louisiana BESE Live Stream, February 21, 2025, at 17:34. Also available at https://www.youtube.com/watch?v=VXL8kZ14rhI.

[4]    *Id.* at 17:44.

[5]    Exhibit 1, Walker Declaration, attaching Exhibits "C-F," Correspondence dated February 10, 11, 12, and 18, 2025.

[6]    *See id.* attaching Exhibit "G," Notice of Hearing dated February 19, 2025.

[7]    Exhibit 2, Unjust School Takeover Newsletter, February 20, 2025, also available at https://app.smore.com/n/d74m8.

[8]    *Id.* (emphasis added).

newsletter further provided the information for the upcoming public hearing and encouraged parents, students, and community leaders to attend the hearing.[9]

In accordance with BESE's Notice,[10] BESE held a public hearing on February 21, 2025, which was recorded.[11] The hearing began with the BESE President Ronnie Morris ("Mr. Morris") stating that they were there to "conduct a public hearing concerning the reconstitution of the Board of Directors for Education Explosion operating Impact Charter School pursuant to Louisiana Revised Statutes 17:39992(D)."[12] Following comment from the State Superintendent of Education, Mr. Morris explained the allegations and the reasons for the reconstitution.[13] Then, Mr. Morris invited the Original Board to "provide any information you feel would be helpful for BESE members to consider the path forward for Impact Charter."[14]

In response, Eugene Collins, a member of the Original Board, presented the defense. Collins was ready; he had prepared remarks arguing why reconstitution was unnecessary,[15] a fact that belies the plaintiff's allegations that notice was inadequate. In his prepared remarks, which went on uninterrupted, Mr. Collins noted that the Original Board was "actively addressing the [BESE] board's concerns by seeking a deputy superintendent to alleviate Dr. Scott's operational load."[16] Following the defense by Mr. Collins, the BESE board voted for reconstitution.[17]

---

[9]    *Id.*
[10]   Exhibit 1, Walker Declaration, attaching Exhibit "G," Notice of Hearing dated February 19, 2025.
[11]   *See id.*, attaching Exhibit "H," Louisiana BESE Live Stream, February 21, 2025, also available at https://www.youtube.com/watch?v=VXL8kZ14rhI.
[12]   *Id.* at 10:08.
[13]   *Id.* at 16:25.
[14]   *Id.* at 23:06.
[15]   *Id.* at 23:40.
[16]   *Id.* at 26:49.
[17]   *Id.* at 42:00 – 45:43.

## II.    LAW AND ARGUMENT

### A.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

A motion to dismiss an action for failure to state a claim assumes the facts alleged in the complaint are true, but challenges plaintiff's right to relief based upon those facts.[18] In addition to the complaint, the Court may consider matters of public record[19] and documents attached to the motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[20]

To survive a Rule 12(b)(6) motion, the complaint must amount to more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21] In fact, the Fifth Circuit has explained that "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[22] A statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient.[23] Dismissal is proper if the complaint lacks an allegation regarding a required element that is necessary to obtain relief.[24]

### B. All of the Claims Asserted by the Original Board Should be Dismissed.

#### 1.  The Original Board's Impermissible Group Pleading Warrants Dismissal

At the outset, it is of note that the Original Board's Complaint is riddled with impermissible group pleading. When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged

---

[18]    *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir.1995).
[19]    *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).
[20]    *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 637-638 (5th Cir. 2014).
[21]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).
[22]    *Rios v. City of Del Rio*, 444 F.3d 417, 420-21 (5th Cir. 2006).
[23]    *Id.* at 421.
[24]    *Id.*

misconduct" without specifying "which defendants engaged in what wrongful conduct."[25] A complaint that contains "impermissibly vague group pleading" should be dismissed.[26]

The Original Board's Complaint makes a conclusory, group allegation that "[d]uring the February 21, 2025 BESE Board meeting, the Defendants voted in favor of reconstituting the entire Education Explosion board."[27] However, the Original Board does not explain what role the individual Defendants allegedly played in the challenged action. In fact, the roll call of the February 21, 2025 hearing reveals that three of the Defendants, particularly Conrad Appel, Dr. Judy Armstrong, and Preston Castille, were not even present during the February 21, 2025 hearing. The Court should not infer from the Original Board's allegations that each individual Defendant participated in what the Original Board *incorrectly* claims is a violation of due process. The Original Board's impermissible group pleading warrants dismissal on that basis alone.

### 2.  Count 1: Alleged Violation of the Due Process (42 U.S.C. § 1983)

#### a.  Plaintiff's Due Process Claims are Barred Pursuant to the 11th Amendment.

The Eleventh Amendment bars all suits for monetary relief brought in federal court against a state or state agency unless the state has consented to suit or Congress has expressly abrogated immunity.[28] Louisiana has not waived sovereign immunity,[29] and this Court as well as others have found that BESE is entitled to sovereign immunity.[30]  Instead, the Louisiana legislature enacted Louisiana Revised Statutes 13:5106(A), which expressly prohibits suits against the State of

---

[25]   *Hawkins v. Sanders*, CV 19-13323, 2023 WL 2565394, at *3 (E.D. La. Mar. 17, 2023), *appeal dismissed*, 23-30200, 2023 WL 11015615 (5th Cir. May 9, 2023).

[26]   *Id.  See also Maurer v. Town of Independence*, No 13-5450, 2015 WL 893457, at *7 (E.D. La. Mar. 2, 2015) (dismissing due process claims against individual board members when the actions specific to the board members were not alleged).

[27]   R. Doc. 101, Amended Complaint in Intervention at ¶ 14.

[28]   *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir.2013).

[29]   *Id*.

[30]   *Kiper v. Louisiana State Bd. of Elementary & Secondary Educ.*, 592 F.Supp. 1343, 1352 (M.D. La.1984), *aff'd sub nom. Kiper v. La State Bd. of Ele/Sec Ed.*, 778 F.2d 789 (5th Cir.1985); *Madison-Tallulah Educ. Ctr. v. La. Bd. of El. & Sec. Educ.*, No. 18-00234, 2018 WL 1769375, at *6 (W.D. La. Apr. 12, 2018).

Louisiana, a state agency, or a political subdivision of the state in any court other than a Louisiana state court.[31] Further, Congress did not abrogate the states' Eleventh Amendment immunity by enacting Section 1983.[32] "[E]leventh amendment immunity is a jurisdictional issue that cannot be ignored."[33] Therefore, Section 1983 suits against state agencies are barred by sovereign immunity.

Although the Eleventh Amendment is written in terms of a state's immunity, it applies equally to suits brought against state agencies and state officials in their official capacities.[34] Absent a waiver of immunity by a state or through a federal statute, the Eleventh Amendment protects states from suit in federal court regardless of whether the suit seeks damages or injunctive relief.[35] "This bar remains in effect when State officials are sued for damages in their official capacity" because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents."[36]

Here, the Original Board asks that they be awarded "compensatory and/or equitable relief as appropriate."[37] As such, the Original Board appear to seek monetary damages from the Defendants, who they have sued "each in their individual and official capacities as members of the Louisiana Board of Elementrary and Secondary Education."[38]  To the extent the Original Board sues the Defendants in their official capacities, state officials in their official capacities are not "persons" subject to suit under Section 1983 with respect to claims for monetary compensation.[39] Because a Section 1983 claim against a state official in his or her official capacity for monetary

---

[31] La. Const. art. XII § 10; La. R.S. 13:5106; *see also Fairley v. Stalder*, 294 Fed.Appx. 805, 811 (5th Cir. 2008).

[32] *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 281 (5th Cir.2002).

[33] *McDonald v. Bd. of Mississippi Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir. 1987) (quotation marks omitted).

[34] *Kiper*, 592 F.Supp. at 1351.

[35] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

[36] *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

[37] R. Doc. 101, Amended Complaint in Intervention at ¶ Prayer for Relief.

[38] R. Doc. 101, Amended Complaint in Intervention at Case Caption.

[39] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

damages is actually a claim against the State itself, such a claim is barred by the Eleventh Amendment.[40]  Accordingly, the Original Board's Section 1983 claims against the Defendants in their official capacities for monetary relief should be dismissed.

      b.   The Claims Against the Defendants in Their Personal Capacities, if any, are Barred Pursuant to Qualified Immunity.

To the extent that the Original Board's general, vague allegations are interpreted to assert claims against the Defendants in their personal capacities, the Original Board's claims are barred by qualified immunity. When a plaintiff seeks monetary damages from government officials for alleged violations of constitutional rights, officials sued in their individual capacities may invoke the defense of qualified immunity.[41] "Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[42]

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[43] Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation."[44] When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[45]

---

[40]    *Williams v. Thomas*, 169 Fed.Appx. 285, 286 (5th Cir. 2006).
[41]    *Gordon v. James*, CV 16-16540, 2017 WL 4311125, at *4 (E.D. La. Sept. 26, 2017).
[42]    *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012).
[43]    *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'").
[44]    *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).
[45]    *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)

When examining qualified immunity, courts engage in a two-prong inquiry.[46] "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]'"[47] "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."[48] To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[49] "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiffs seek to apply."[50]

Once the defense of qualified immunity is raised, the burden of negating the defense shifts to the plaintiff.[51] Moreover, Plaintiff "has the burden to point out the clearly established law."[52] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[53]

Here, the Original Board members generally allege that the Defendants violated their constitutional rights under 42 U.S.C. § 1983. If the Original Board members are in fact asserting claims against the Defendants in their personal capacities, they are unable to meet their burden of negating that the Defendants are entitled to qualified immunity. The Original Board has not and cannot identify the clear precedent purportedly violated by the Defendants.

---

[46]     *Pearson*, 555 U.S. at 236.
[47]     *Tolan v. Cotton*, 572 U.S. 650, 655-56, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (alternation in original).
[48]     *Id.* at 656.
[49]     *Anderson v. Creighton*, 483 U.S. 635; 107 S.Ct. 3034, 3037; 97 L.Ed.2d 523 (1987).
[50]     *D.C. v. Wesby*, 583 U.S. 48; 138 S.Ct. 577, 589-90; 199 L.Ed.2d 453 (2018).
[51]     *See Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).
[52]     *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019).
[53]     *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994).

Indeed, the Original Board has not even taken the time to attribute specific actions to specific Defendants. The Original Board's conclusory complaint that the "BESE Board failed to comply with mandatory steps required prior to reconstitution, including documenting deficiencies, issuing formal warnings, and providing the organization an opportunity to cure any alleged noncompliance"[54] and did not provide a legal mechanism for appeal does not state a claim. The Original Board is required to point to clear legal precedent that require these procedures, that Defendants violated that precedent, and that "every reasonable official would interpret it to establish the particular rule the plaintiffs seek to apply."[55] But the Original Board has not even explained what they mean by "documenting deficiencies," "formal warnings," or "opportunity to cure," much less point to clear precedent confirming "every reasonable official would interpret"[56] these unexplained procedures to be required. Likewise, the Original Board has not even explained how these vaguely described procedures were violated. The Original Board similarly has identified no precedent requiring a mechanism for appeal. These failures by the Original Board are fatal to its claim.

c. <u>The Original Board's Due Process was Not Violated</u>.

Even if the Defendants are not entitled to sovereign or qualified immunity, all of the Original Board's 42 U.S.C. § 1983 claims should be dismissed because they have not identified a cognizable property or liberty interest that is protected by the Fourteenth Amendment.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of life, liberty, and property.[57] The range of interests protected by procedural due process is not infinite, and the Supreme Court has rejected

---

[54] R. Doc. 101, Amended Complaint in Intervention at ¶ 17.
[55] *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).
[56] *Id.*
[57] *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

the notion that any grievous loss visited upon a person by the state is sufficient to invoke the procedural protections of the Due Process Clause.[58] The Supreme Court has explained:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.[59]

State law governs whether a property interest exists,[60] and here the Original Board has failed to identify any statutory or jurisprudential authority setting forth that there is a property interest in volunteering on a nonprofit board warranting due process protection.[61] The Original Board were volunteer board members, and their work on the Board was community service. Patently, the Original Board is prohibited by Louisiana law from being compensated for serving on the board,[62] and therefore cannot allege a loss of compensation as the basis for claiming entitlement to due process. While of course volunteer board service is commendable, the absence of statutory and jurisprudential authority indicating that a position as a voluntary, uncompensated board member is a property right entitled to due process protection requires dismissal of the Original Board's claim.

Not only has the Original Board failed to establish they, as board members, have a due process property right to sit on the board of Education Explosion, they likewise cannot establish that the board of Education Explosion in its entirety maintains a property interest in the charter itself. Courts across the country, including in Louisiana, uniformly have concluded that charter

---

[58]    *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).
[59]    *Roth*, 408 U.S. at 577.
[60]    *See id.*
[61]    In addition to failing to identify any Louisiana law indicating they have a property interest in an uncompensated, volunteer board seat, the Original Board also has not identified any law or cases from any other state recognizing a due process property interest in a volunteer board seat.
[62]    *See* La. Rev. Stat. 17:3991(A)(b)(i).

schools themselves have no property rights in maintaining control of the school. For example, in *Project Reflect, Inc. v. Metropolitan Nashville Board of Public Education*, the United States District Court for the Middle District of Tennessee concluded that a charter organization had no property interest to operate a charter school warranting due process protection.[63] And in *Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary & Secondary Educ.*, a Louisiana state court held that the Louisiana Charter School Law did not provide the plaintiff with a due process right in their charter school contract such that a hearing was required prior to revocation.[64]

No such property rights exist for the charter schools because, these courts reason, the state charterers maintain discretion whether to allow the charter school to continue to operate.[65] Similarly, here, our legislature has afforded BESE the discretion to reconstitute a charter as set forth in the governing statute.[66] Because the charter schools including Impact Charter do not have a due process property interest in operating a school, it stands to reason that board members who themselves are unpaid volunteers do not have a property interest in their board seats.

Even if the Court were to consider that unpaid volunteers serving on a non-profit board have a property interest in volunteering, the Original Board nevertheless has not stated a claim for relief. As an initial matter, the Original Board's argument that Louisiana Revised Statutes 17:3992 and Louisiana Administrative Code Title 28, Part CXXXIX, Section 1701, Bulletin 126 were not followed is meritless because those provisions do not apply to reconstitution and instead apply to revocation. Louisiana Revised Statutes 17:3992 contemplates the reasons for revocation of a

---

[63]  *Project Reflect, Inc. v. Metro. Nashville Bd. of Pub. Educ.*, 947 F.Supp.2d 868, 878 (M.D. Tenn.2013).

[64]  *Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary & Secondary Educ.*, 2011-2067 (La. App. 1 Cir. 6/22/12), 97 So. 3d 440, 445. *See also Project School v. City of Indianapolis*, No. 1:12-cv-01028, 2012 WL 3114573, at *3-*5 (S.D. Ind. Jul. 31, 2012) (school did not possess a due process property right to operate charter school); *In re New Maurice J. Moyer Academy, Inc.*, 108 A. 3d 294, 313 (D. Chanc. 2015) (school "did not have a constitutionally protected property interest in its charter because, under Delaware law, the Department's decision to revoke its charter was discretionary").

[65]  *See* fn. 60, *supra*.

[66]  *See* La. Rev. Stat. §17:3992.

school's charter. These reasons include when the charter school or its officers or employees fail to meet generally accepted accounting standards of fiscal management, violate any provision of law or BESE policy applicable to a charter school, its officers, or employees, or if the health, safety, and welfare of students is threatened.[67] Section 1701 similarly contemplates the same reasons for revocation of a school's charter.[68] Here, BESE did not revoke the charter of Impact Charter School, thus making the requirements relating to revocation of a charter inapplicable.

As an alternative to revocation, and in accordance with rules promulgated by the State board, after a public hearing, BESE may reconstitute the governing body of the charter holder if the chartering authority determines that the governing body of the charter holder committed certain acts and/or failed to meet certain requirements.[69] The law does not require that before BESE reconstitutes a the governing body, it must first go through the process used when revoking a charter. Instead, it requires only that a public hearing be had, and then such action can be implemented *in lieu of revocation*.[70]

Even still, adequate protections of notice and an opportunity to be heard prior to the February 21, 2025 hearing were provided. The deprivation of property or liberty interests may, in some instances, require a hearing; however, there is no requirement that all hearings be conducted pursuant to the Administrative Procedure Act.[71] The giving of notice of a hearing by administrative agencies need only be reasonable and need not meet the exacting requirements for notice in judicial

---

[67]   La. Rev. Stat. §17:3992(C).
[68]   LAC 28: CXXXIX.1701.
[69]   La. R.S. 17:3992(D).
[70]   *Id.,* stating, "[a]s an alternative to revocation as provided for in Subsection C of this Section, and in accordance with rules promulgated by the state board, the chartering authority may reconstitute the governing body of the charter holder if the chartering authority determines that the governing body of the charter holder has done one of the following…"
[71]   *Grace v. Bd. of Trustees for State Colleges & Universities*, 442 So.2d 598, 602 (La. Ct. App.1983), *writ denied*, 444 So.2d 1223 (La.1984).

proceedings.[72] After the alarming Louisiana Auditor's Report, but before the February 21, 2025 hearing, the Louisiana Department of Education staff sent the Original Board three separate records requests and met with members of the Original Board and/or its representatives on two separate occasions, including on February 10, 2025 and February 17, 2025.[73] As of February 21, 2025, BESE's pending records requests to the Original Board had largely gone ignored.[74]

On February 19, 2025, BESE staff sent correspondence and Notice of Public Hearing to members of the Original Board and to the Original Board's attorney at the time, Ronald Haley.[75] The Notice specifically stated that BESE would "convene and conduct a public hearing **concerning the reconstitution of the board of Education Explosion, Inc.** pursuant to LA R.S. 17:3992(D) and Bulletin 126" on Friday, February 21, 2025 at 9:00 a.m. CST.[76] The Notice went on to state that "[a]t this hearing, **BESE will conduct a review of the board of directors as part of the reconstitution process**."[77] During the February 21, 2025 hearing, Eugene Collins, a member of the Old Board appearing with the board's counsel, provided the Original Board's defense using prepared remarks.[78] The Original Board was provided notice and an opportunity to be heard at a public hearing. Therefore, to the extent any process was due to the Original Board, it was provided in accordance with Louisiana law and consistent with due process.

---

[72]     *Tafaro's Inv. Co. v. Div. of Hous. Imp.*, 261 La. 183, 192; 259 So.2d 57, 60–61 (1972).
[73]     Exhibit 1, Walker Declaration, attaching Exhibits "C-F," Correspondences dated February 10, 11, 12, and 18, 2025.
[74]     *Id.*
[75]     Exhibit 1, Walker Declaration, attaching Exhibit "G," Notice of Hearing dated February 19, 2025.
[76]     *Id.* (emphasis added).
[77]     *Id.* (emphasis added).
[78]     Exhibit 1, Walker Declaration, attaching Exhibit "H," Louisiana BESE Live Stream, February 21, 2025, at 23:27. Also available at https://www.youtube.com/watch?v=VXL8kZ14rhI.

### 3. Count 2: Alleged Violation of Louisiana Charter School Law

The Original Board asserts that the Defendants violated certain provisions contained in the Louisiana Charter School Law by reconstituting Impact Charter School's Board.[79] These claims also should be dismissed.

In 1997, the Louisiana Legislature passed the Louisiana Public Charter School Law,[80] allowing various groups and entities to form nonprofit corporations for the purpose of forming charter schools.[81] Under Louisiana law, charter schools are organized and operate as nonprofit corporations, and the law distinguishes charter schools from other public schools by exempting them from all public laws and regulations except as otherwise provided.[82] A type 2 charter school is a "new school or a preexisting public school converted and operated as the result of and pursuant to a charter between the nonprofit corporation created to operate the school and the State Board of Elementary and Secondary Education."[83]

BESE is a constitutionally created entity with a mandate to supervise and control the public elementary and secondary schools and special schools in the state.[84] To this end, BESE is empowered to enter into any proposed charter, which complies with the Louisiana Charter School Law and the rules adopted pursuant to its authority that BESE determines is a valid, complete,

---

[79]   R. Doc. 101, Amended Complaint in Intervention at ¶ 20.
[80]   Formerly known as Louisiana Charter School Demonstration Programs law. *See* La. R.S. 17:3971 (Acts 1995, No. 192, §1, eff. June 14, 1995; Acts 1997, No. 477, §1, eff. June 30, 1997).
[81]   La. R.S. 17:3971, *et seq.*
[82]   *See* La. R.S. 17:3991; La. R.S. 17:3996; *see also Mancuso v. Sw. Louisiana Charter Acad. Found. Inc.*, 2:23-CV-01642, 2024 WL 4096436, at *3 (W.D. La. Aug. 21, 2024), *report and recommendation adopted*, 2:23-CV-01642, 2024 WL 4094288 (W.D. La. Sept. 5, 2024) (quoting *Advocates for Arts-Based Education Corp. v. Orleans Parish School Board*, No. 09-6607, 2010 WL 375223, at *3 (E.D. La. Jan. 26, 2010)).
[83]   La. R.S. 17:3973(2)(b)(ii).
[84]   La. Const. art. VIII, § 3(A); *Hill v. Jindal*, 2014-1757, p. 22 (La.App. 1 Cir. 6/17/15), 175 So.3d 988, 1006, *writ denied*, 2015-1394 (La. 10/23/15), 179 So.3d 600.

financially well-structured, and educationally sound proposal.[85] Accordingly, BESE is the chartering authority for Type 2 charter schools.[86]

In this instance, the Original Board vaguely claims that its removal violates the "independent governance provisions of the statute" that calls for charter schools to be operated by non-profits.[87] However, despite the general independence and autonomy granted to charter schools, they do not operate with unfettered or self-executing control. Once Education Explosion made the choice to enter into its initial charter agreement, including any subsequent charter contracts, Education Explosion subjected itself to be governed by the relevant laws governing Louisiana Charter Schools and BESE, as charters operate pursuant to the authority of BESE. These restrictions and limitations show that Education Explosion knew, or should have known, that even at the time of its initial charter contract that it did not possess absolute autonomy regarding the composition of its governance board.

Education Explosion further solidified this understanding when it renewed its charter in 2022. Dated July 1, 2022, Education Explosion, by way of its Board of Directors, and BESE entered into a Type 2 Renewal Charter Contract ("Renewal Charter Contract").[88] Sharon Henderson, as Chair/President of Education Explosion, executed the Renewal Charter Contract on July 7, 2022. The Renewal Charter Contract represented the entire agreement between the parties and "no course of prior dealings between the parties shall supplement or explain any terms used in" the Renewal Charter Contract.  The Renewal Charter Contract dictated that the Board of Directors shall be the final authority in matters affecting the Charter School, including, but not

---

[85]    La. R.S. 17:3981.
[86]    *See* La. R.S. 17:3983(2)(a).
[87]    La. R.S. 17:3991(b)(i).
[88]    Exhibit 3, Type 2 Renewal Charter Contract entered into by Education Explosion Inc., and the Louisiana Board of Elementary and Secondary Education, July 1, 2022.

limited to, staffing, financial accountability, and curriculum, *except* as otherwise provided in this contract and as provided by applicable law and by policies promulgated by BESE.[89]

As the Original Board has pointed out, charter schools do maintain *operational* autonomy.[90] They are tasked with overseeing the day-to-day operations of the charter school, such as staffing, financial accountability, and curriculum. This does not equate to absolute autonomy that permits the Board to operate in an unrestricted manner and outside the confines of the law. Accordingly, the Defendants did not violate the Louisiana Charter School Law by acting within its authority as the chartering authority of the Board.

### 4. Count 3: Alleged Violation of Federal Non-Profit Governance Laws

The Internal Revenue Code provides that tax-exempt status applies to entities that are "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes" and that meet other statutory requirements.[91] The Original Board asserts that BESE lacked authority to reconstitute the board of a Section 501(c)(3) tax exempt organization without judicial due process,[92] but yet again fails to plead sufficient facts to state a plausible claim for relief. Section 501(c)(3) status is a federal tax classification that determines an entity's eligibility for tax-exempt treatment, it is not a substantive restriction on a state's ability to regulate nonprofit organizations. Nothing in the statute confers immunity from state regulatory authority or restricts a state's ability to oversee organizations that hold this tax status.

Additionally, the Original Board does not allege any federal law that BESE violated, nor does it explain how Section 501(c)(3) tax-exempt status limits BESE's authority under Louisiana law. While the Original Board suggests that BESE's intervention and reconstitution under

---

[89]    *Id.* (emphasis added).
[90]    R. Doc. 101, Amended Complaint in Intervention at ¶ 20.
[91]    *See* 26 U.S.C. § 501(c)(3).
[92]    R. Doc. 101, Amended Complaint in Intervention at ¶ 21.

Louisiana Revised Statutes 17:3992(D) conflicts with federal law, it has not cited any facts, statutes, or legal precedent supporting that argument. The mere fact that Education Explosion holds tax-exempt status does not prevent BESE from exercising oversight over an organization that operates under state law. Accordingly, the tax-exempt status of Education Explosion does not insulate it from state oversight, nor does it provide a legal basis to challenge BESE's express authority for reconstitution under Louisiana Revised Statutes 17:3992(D). This claim should be dismissed.

### 5.  Count 4: Alleged Violation of the U.S. Constitution's Contracts Clause

The Contracts Clause prohibits states from passing any "[l]aw impairing the Obligation of Contracts ..."[93] "The Clause is not, however, the Draconian provision that its words might seem to imply… [T]he Contracts clause does not operate to obliterate the police power of the States."[94] The power of state and local governments to "protect the lives, health, morals, comfort and general welfare of the people ... is paramount to any rights under contracts between individuals."[95] The threshold inquiry of a Contracts Clause claim is "'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'"[96] To make that determination, a court first must inquire whether (1) a contract exists; (2) the law in question impairs an obligation under the contract; and (3) the impairment is substantial.[97]

Here, the Original Board maintains that "the Charter Contract between Education Explosion and BESE did not authorize Board reconstitution."[98] The Original Board further claims that the reconstitution disrupted the charter contract between Education Explosion and BESE and

---

[93]     U.S. Const. art. I, § 10, cl. 1.
[94]     *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240-41 (1978).
[95]     *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 503 (1987).
[96]     *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411; 103 S.Ct. 697, 704; 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel Co.*, 438 U.S. at 244).
[97]     *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992).
[98]     R. Doc. 101, Amended Complaint in Intervention at ¶ 22.

18

impaired the obligations of that contract."[99] Again, these unsubstantiated claims are meritless, for these reasons.

First, the Original Board fails to point to any facts as to what obligations were impaired or how the reconstitution impaired those obligations under the Renewal Charter Contract. BESE did not contract with the Original Board. And, in any event, any contracts that the Board may have entered into would not be changed solely due to changes to the makeup of the Board.

Second, the Renewal Charter Contract contemplated Act 174 of 2024, and, as a result, the potential of reconstitution. Courts must give legal effect to all contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences.[100] Importantly, Section 6.6.3 of the Renewal Charter Contract specifically states:

> The parties intend that they be bound by, and that this Agreement be subject to, any and **all future amendments or additions to the statutes, regulations, policies and procedures applicable to charter schools**. The Charter Operator and BESE hereby agree to comply with any such change as if it were specifically set forth herein. Any such change shall supersede any provision within this Agreement that conflicts with it.[101]

As such, based on the four corners of the Renewal Charter Contract, Education Explosion agreed to subject itself to Act 174 of 2024.

Finally, as an entity subject to the authority of BESE, and as an entity receiving taxpayer funds, Education Explosion was closely regulated by BESE, which always maintained regulatory control over charters, including the right to restrict, modify, and/or terminate the charter.[102] Given

---

[99] *Id.*

[100] *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 578 (5th Cir. 2015).

[101] Exhibit 3, Type 2 Renewal Charter Contract entered into by Education Explosion Inc., and the Louisiana Board of Elementary and Secondary Education, July 1, 2022.

[102] *See* La. R.S. 17:3991, entitled [c]harter schools; requirements; limitations; renewal; amendment; revocation; board membership.

such intensive regulations, a reasonable person entering into any such contract, such as those described by the Original Board, should expect that operational control of the school by the Original Board may be terminated.[103] Accordingly, the Original Board's Contracts Clause claim fails as a matter of law.

### 6. Count 5: Alleged Violation of Equal Protection

The Original Board fails to state a plausible equal protection claim because as alleged, the Original Board has not alleged how other charters are treated and which, if any, of Defendants' actions differed in any meaningful way.

An equal protection claim requires either identification of a class or showing that the aggrieved party is a "class of one."[104] The Supreme Court has recognized successful equal protection claims brought by a "class of one" where a plaintiff does not allege membership in a class or group, but rather alleges that, individually, she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment.[105] To establish a "class-of-one" claim, a plaintiff must show that (1) she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment.[106] A plaintiff's "class of one" equal protection claim may be dismissed on a Rule 12(b)(6) motion to dismiss if the government's actions are rationally related to a legitimate government interest.[107] A

---

[103]    *See 729, Inc. v. Kenton Co. Fiscal Ct.*, 515 F.3d 485 (6th Cir. 2008) ("[W]hen an industry is highly regulated, it is unlikely that an exercise of general legislative power will constitute a substantial impairment of contract rights."); *Alliance of Auto Mfrs. v. Gwadosky*, 430 F.3d 30, 42 (1st Cir. 2005) (when a contract is executed with knowledge and expectation of pervasive state regulation "[i]t follows inexorably, as night follows day," that subsequent legislation does not substantially impair the contract).

[104]    *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015).

[105]    *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

[106]    *Holden v. Perkins*, 398 F.Supp.3d 16 (E.D. La.2019).

[107]    *Louisiana Cmty. Dev. Capital Inv. Fund, Inc. v. Grambling Legends Square Taxing Dist.*, CIV.A. 14-2212, 2015 WL 1737954, at *9 (W.D. La. Mar. 16, 2015), *report and recommendation adopted*, CIV.A. 14-2212, 2015 WL 1800319 (W.D. La. Apr. 16, 2015) (dismissing plaintiffs' "class of one" equal protection claim on a Rule 12(b)(6) motion where stated explanation for differential treatment was rational).

complaint that "generally alleges that other similarly situated individuals were treated differently, but [...] points to no specific person or persons and provides no specifics as to their violations" fails to state an equal protection claim.[108]

Here, the Original Board claims that "[o]ther similarly situated charter school operators were not subjected to board reconstitution or traditional revocation despite documented governance failures" and that "[t]his selective enforcement lacks a rational basis and violates the Equal Protection Clause."[109] This general allegation fails to state an equal protection claim because it does not explicitly name the alleged "other similarly situated charter school operators" that the Original Board claims were treated differently. While the Original Board does assert that the alleged "other similarly situated charter school operators" involved "documented governance failures," this is insufficiently particular to cross the threshold into plausibility and does not rise to the level of providing specifics as to their violations.

Equally important, the Original Board has not alleged disparate treatment. It has not identified any other schools that were similarly situated that failed to adequately respond to requests for information following a legislative audit that found financial irregularities but were not subject to reconstitution. These claims should be dismissed.

### 7. Count 6: Injunctive Relief

Count 6 asserts a claim for injunctive relief based upon the facts and claims for relief previously alleged. It is this count for injunctive relief that the Original Board claim allows them to circumvent the Defendants' sovereign immunity defense, based on the *Ex parte Young* doctrine.

---

[108]    *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018).
[109]    R. Doc. 101, Amended Complaint in Intervention at ¶ 23.

The *Ex parte Young* doctrine recognizes a narrow exception to Eleventh Amendment immunity for claims of prospective injunctive or declaratory relief against a state official.[110] However, the exception does not save pendant state law claims against state officials in their official capacity.[111] Nor does it save declaratory or injunctive claims if the plaintiff seeks retroactive relief pursuant to these claims.[112]

For *Young* to apply, three criteria must be satisfied: (1) a "plaintiff must name individual state officials as defendants in their official capacities,"[113] (2) the plaintiff must allege "an ongoing violation of federal law,"[114] and (3) the relief sought must be "properly characterized as prospective."[115] The Fifth Circuit has held that to determine whether the exception applies, courts must conduct a straightforward, simply inquiry, and courts cannot consider the merits of the underlying claims.[116] "Merely requesting injunctive or declaratory relief is not enough" to qualify as prospective; "sovereign immunity does not turn entirely on the relief sought."[117] " 'In discerning on which side of th[at] line a particular case falls, we look to the substance rather than to the form of the relief sought and will be guided by the policies underlying ...*Young*.' "[118] "[A] complaint must allege that the defendant is violating federal law, not simply that the defendant has done so."[119]

Here, the Original Board's claims all trace back to February 21, 2025, the day of the reconstitution hearing. On *that* day, they claim that their due process rights were violated and at

---

110    *Ex parte Young*, 209 U.S. 123 (1908).
111    *See Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992).
112    *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).
113    *Raj*, 714 F.3d at 328.
114    *Verizon*, 535 U.S. at 645.
115    *Id.*
116    *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471 (5th Cir. 2020).
117    *Id.*
118    *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 279 (1986)).
119    *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).

*that* time, the BESE Board violated the U.S. Constitution's Contracts Clause, federal non-profit governance laws, and equal protection. Thus, the Original Board seeks "injunctive relief against the BESE Board, **nullifying** their decision to reconstitute the Board of Education Explosion, Inc."[120]  Undoubtedly, this request does not assert that the BESE Board *is continuing to violate* federal law. The Original Board does not seek prospective relief. Instead, it asserts that the BESE Board *has* violated federal law, namely on February 21, 2025. Indeed, the remedies the Original Board seeks are inherently retrospective, because they are solely targeted at undoing the reconstitution that occurred on February 21, 2025. The Original Board's request for injunctive relief should be denied.

### 8.  Count 7: Declaratory Relief Under 28 U.S.C. 2201

The Original Board requests a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, and attorney's fees under 42 U.S.C. § 1988.[121] But neither statute creates an independent cause of action.[122]  A petition for a declaratory judgment concerning federal law is not sufficient to create federal jurisdiction; hence, the relevant cause of action must arise under some other federal law."[123] Here, even assuming the Original Board can overcome the sovereign and qualified immunity bars, which they cannot, because all of the Original Board's substantive claims do not state a claim and should be dismissed, the Original Board's claim for declaratory relief also should be dismissed.[124] The Original Board's conclusory allegations fail to state a claim for declaratory relief, warranting dismissal.

---

[120]      R. Doc. 101, Amended Complaint in Intervention at ¶ 24 (emphasis added).
[121]      *Hutchinson v. Terrebonne Par. Consol. Gov't*, CV 23-5681, 2025 WL 592776, at *2 (E.D. La. Feb. 24, 2025).
[122]      *Villegas v. Galloway*, 458 Fed.Appx. 334, 338 (5th Cir.2012).
[123]      *See Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir.1996).
[124]      *See Akula v. Phillips*, CV 22-1070, 2022 WL 17903707, at *8 (E.D. La. Dec. 23, 2022), *aff'd sub nom. Akula v. Russo*, 23-30046, 2023 WL 6892182 (5th Cir. Oct. 19, 2023) ("Because the Court has found Plaintiff failed to state claims upon which relief can be granted in Counts I, II, and III, Count IV [for declaratory relief] should be dismissed—there is nothing for it to stand on.")

### 9. Count 8: Declaratory Relief: Alleged Unconstitutionality of La. R.S. 17:3992(D)

Generally, legislative acts are presumed constitutional and the party challenging an act's validity bears the burden of proving it is unconstitutional.[125] This presumption is especially forceful for statutes promoting a public purpose, such as those relating to public finance.[126] The legislature's power derives from the citizens - who freely elect their legislative representatives, and the Louisiana Constitution serves as a limitation on the legislature's otherwise plenary power. The legislature can enact any legislation not prohibited by the state constitution.[127] When a constitutional challenge is made, the question is whether the constitution restricts the legislature, either expressly or impliedly, from enacting the statute.[128]

Since the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the Legislature, the Legislature may enact any legislation the constitution does not prohibit.[129] This Court has consistently held legislative enactments are presumed valid and their constitutionality should be upheld when possible.[130] Due to this presumption, a party challenging the constitutionality of a statute must cite the specific constitutional provision that prohibits the legislative action.[131]

Here, the Original Board seeks a declaration that Louisiana Revised Statutes 17:3992(D) is unconstitutional as applied to Education Explosion, and/or facially unconstitutional. However, the Original Board has failed to articulate how or why the statute is facially unconstitutional, and the Original Board further fails to provide or cite to the specific constitutional provision(s) that

---

[125]  *State v. Spell*, 2021-00876 (La. 5/13/22), 339 So. 3d 1125, 1130-31.
[126]  *Polk v. Edwards*, 626 So. 2d 1128, 1132 (La. 1993).
[127]  *Id*.
[128]  *Caddo-Shreveport Sales & Use Tax Comm'n v. Office of Motor Vehicles Through Dep't of Pub. Safety & Corr. of State*, 97-2233, p. 6 (La. 4/14/98); 710 So.2d 776, 780.
[129]  *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund*, 2005-2548, pp. 11-12 (La. 10/1/07); 986 So.2d 1, on reh'g (Jan. 7, 2008).
[130]  *State v. Hatton*, 2007-2377, p. 14 (La. 7/1/08); 985 So.2d 709, 719.
[131]  *State v. Granger*, 07–2285, p. 8 (La.5/21/08), 982 So.2d 779, 786.

prohibit Louisiana Revised Statutes 17:3992(D). And because all other counts alleging constitutional violations fail to state a claim for constitutional violations, no declaratory judgment should be issued.[132] Therefore, this claim must also be dismissed.

### B. CONCLUSION

The broad and conclusionary allegations against the Defendants within Plaintiff's Complaint clearly lack any colorable basis in law and are devoid of any substantive factual basis. Further, the claims asserted by the Original Board are barred by the Eleventh Amendment and/or precluded by the qualified immunity afforded to the Defendants. Accordingly, for the above-discussed reasons and any other reasons that may occur to this Honorable Court, Defendants' Motion to Dismiss should be granted and the Original Board's claims should be dismissed, with prejudice, and at their sole cost.

Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

BY: */s/ Stephen L. Miles*
Stephen L. Miles, 31263
Emily E. Ross, 34739
Alease T. Scott, 37533
PIPES | MILES | BECKMAN, LLC
1100 Poydras Street, Suite 3300
New Orleans, LA 70163
Telephone: 504-322-7070
Facsimile: 504-322-7520
smiles@pipesmiles.com
eross@pipesmiles.com
ascott@pipesmiles.com

*and*

---

[132] *See Akula*, 2022 WL 17903707 at *8.

Carey T. Jones (#07474)
Amanda M. LaGroue (#35509)
Assistant Attorney Generals
Louisiana Department of Justice
P.O. Box 94005
Baton Rouge, LA 70802
Telephone: (225) 326-6060
Fax: (225) 326-6098
Email: jonescar@ag.louisiana.gov
        LaGroueA@ag.louisiana.gov

*Counsel for Defendants,*
*Paul Hollis, Dr. Sharon Latten Clark,*
*Sandy Holloway, Stacey Melerine, Lance*
*Harris, Ronnie Morris, Kevin Berken,*
*Preston Castille, Conrad Appel,*
*Dr. Judy Armstrong, and*
*Simone Champagne*